# DOTSON v. MILLIKEN.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF
COLUMBIA.

No. 48. Argued March 4, 5, 1908.—Decided March 23, 1908.

A broker employed to sell land subject to a requirement of the purchaser
which the vendor declares will be complied with is entitled to his com-
missions if the sale falls through solely because the vendor's representa-
tions are inaccurate.

The fact that the particular portion of a tract of land for which a broker
finds a purchaser in accordance with the vendor's offer cannot be
identified does not defeat the broker's claim for commissions if the sale
falls-through entirely for other reasons for which the vendor was exclu-
sively responsible.

27 App. D. C. 500, affirmed.

THE facts are stated in the opinion.

*Mr. R. Burnham Moffat* and *Mr. A. S. Worthington*, for
plaintiff in error.

*Mr. J. J. Darlington* for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action for a commission of $2.50 an acre on 10,000
acres of coal land belonging to the defendant, the plaintiff in
error, for which, although not sold, the defendant in error, the
plaintiff, says that he furnished a purchaser, satisfying the
terms of the understanding on which he was employed. The
errors alleged and now insisted upon are the giving of an in-
struction requested by the plaintiff and refusing one asked by
the defendant. To explain them it will be necessary to give a
summary of the evidence, or part of it.

Relations between the parties were opened by a letter from
the defendant, written on April 24, 1902, at the request of a

friend of the plaintiff's, enclosing circulars concerning 124,000 acres of coal land in Kentucky. The letter said: "We have arranged with R. R. Companies to build a branch into it and develop the lands," and the circulars also stated that the owners had an understanding with the railroads near the land, by which they were to build a branch into the land as soon as the owners were ready to open up mines, etc., with more of the same sort. On April 30 the parties met and the plaintiff, Milliken, told the defendant, Dotson, that he knew the land, and, as was the truth, that the important thing was about the railroad, whether there was any way to get the property to market. Dotson replied that he had an arrangement with Spencer, President of the Southern Railway, to build a road in there at once, that at that time they had their surveyors in there and were locating a line of road, etc. Thereupon it was arranged that Dotson would give $2.50 an acre for every acre Milliken could sell at $20, and that Milliken was to go to work for a purchaser, which Milliken accordingly did.

After a letter on May 2, giving an account of a first interview and an answer dwelling on the great increase of value that would come from the building of railroads at once through the property, Milliken wrote on May 7, saying that he was writing to the two roads to know if they would "build the road in there, as soon as we are ready to begin the development of the property," and that the prospective purchasers "want to know positively about the railroad being built in there, if they go into it." The plaintiff seems to have written as his letter stated, but he testified that an assurance from Dotson would have been satisfactory and was satisfactory when it came. On May 8, to meet the purchasers' doubts, he telegraphed to Dotson: "See Spencer and write me to-night how much development he will require before building road into property," etc. On the same day Dotson replied: "I have already discussed fully with Mr. Spencer the point . . . and am glad to say that Mr. Spencer is willing to build the road into the property without placing any requirements on the property holders

to put in certain sized plants, or any number of coke ovens,"
with further details.  This seemed at the time to satisfy the
purchasers.  On May 12 Milliken wrote to Dotson that if his
coal would make as good coke as the Stonega coal and the
Southern would build a branch line into the property, the par-
ties would put their capital in; that it was for Dotson to "sub-
stantiate these two points, which I believe you will do;" that
he had a letter from Mr. H. Smith, the President of the Louis-
ville and Nashville, declining to build a branch line, but that
if Dotson had Spencer safely committed to him they did not
care for Smith's road.  On the same day Dotson wrote to Spen-
cer, asking for a letter to show, which Spencer answered the
next day, declining until he had more definite knowledge and
obligation as to improvement, and professing to repeat what
he had said, viz., that if the property of the amount previously
named should be put into such shape as to warrant the con-
struction of a railroad they would take up and consider favor-
ably a plan.  This is thought by the plaintiff to contradict the
statements that Dotson had made to him.  Spencer testified
that there never was any agreement, or more than what just
has been stated from his letter, and Dotson's answer, written
May 16, confirms the testimony by the absence of any tone of
surprise.

Dotson testified that he showed Spencer's letter to Milliken.
Milliken testified the contrary, and his case was that, having
no notice of the correspondence, he was going ahead under
Dotson's letter of May 8.  On May 29 Dotson wrote as to sam-
ples of coal, adding that he understood the Southern Railway
Company had secured their right of way with one or two ex-
ceptions, that he hoped Spencer would call his men out and
keep     "until we get our tracts rounded up."  On
June     wrote to Dotson, communicating a very favor-
able     coal, and saying: "I may wire you by the
time     es you to come up here to close the deal
[fo      y asked me in particular this afternoon
he       uld be built into this land from Middles-

boro." He added that Easter, one of the purchasers, asked if he could go and have a talk with Spencer on the subject, with Dotson, and that Milliken answered yes. On June 12 Dotson answered that as Mr. Spencer's plans were fixed, Spencer would not hesitate to say to Mr. Easter that they would build the road into that section at once, and urged prompt action. In another letter, of July 8, he said: "After we completed arrangements with the R. R. Company for the development of the property, we advanced price to $20 per acre." On July 24 an option on "ten thousand acres of land in Harlan County, Ky.," at $20 per acre for sixty days, was given to Easter in consideration of his forthwith sending an engineer to examine and report on the same, and on August 25 Milliken wrote to Dotson that Easter's party had decided to take the 10,000 acres on condition that Mr. Spencer would assure them as to the building of the railroad to Harlan court house, that they had written to Spencer, and if his answer confirmed Dotson's representations they would close the purchase. If it did not, they did not want the land at any price. There was an interview, it seems, on September 5, at which Easter asked Dotson to get a letter from Spencer, but Dotson said that Easter was the proper party, and that they would have to offer some inducements to get such an assurance, but he thought that if Easter would let Spencer know what he was willing to do, Spencer would not object. Thereupon there was some correspondence, it turned out that the Railroad company would not build, and the transaction fell through.

The foregoing letters show that the plaintiff was employed and went to work. He spent a good deal of time and money in his efforts, as the defendant knew. There is reasonable doubt as to the rate at which he was to be paid. The substantial question is what he had to do to entitle him to his compensation. The bargain made may have been improvident and may have been different from that the defendant would have made if he had taken all the circumstances into account. But the general question is what the parties meant in

finding to have been made in fact. It was recognized that what the railroads would do was decisive, and it was to be expected that parties thinking of a purchase would require an assurance from them, or something more definite than what the defendant had said. The plaintiff was to go to work at once, and the jury well might find that he was not understood to take the risk of what the railroads might do. The question is between the broker and seller, not between the purchaser and seller. The seller was willing and meant that the broker should accept his confidence as well founded, although he must have known that the purchaser would or might ask more. The correspondence indicates very strongly that Milliken really relied upon Dotson's statement that an agreement had been made. So, again, it might be found that Dotson was willing to take his chances as to the specification of the ten thousand acres in the larger tract at the defendant's command. The option that satisfied him and his purchasers was enough, if accepted, to entitle the plaintiff to his pay. The jury was warranted in finding that the plaintiff was employed at the rate named to make a bargain for land to be identified later and subject to requirement of the purchaser that the railroads or one of them would agree to build a road into the land.

The ruling requested for the plaintiff was as follows:

"If the jury believe from the evidence that the defendant, on or about the 30th day of April, 1902, represented to the plaintiff that he, the defendant, was desirous of securing a purchaser for either the whole or any considerable quantity of the Harlan County coal lands at the price of $20.00 per acre, that he had obtained from the Southern Railway Company its consent or agreement to construct a branch railroad into the said coal lands, and that he would pay to the plaintiff the sum of $2.50 for each and every acre for which he should find a purchaser at and for the price of $20.00 per acre, and that shortly thereafter, namely, on or about the 8th day of May, 1902, he further represented to the plaintiff that the Southern Railway Company was willing to build the said railroad into

the said property without placing any requirements on the purchasers or holders of the said lands to put in any certain size of plants or number of coke ovens, and that the plaintiff, relying upon the said representations of the defendant, expended time and effort in the attempt to find a purchaser, and did find a purchaser able, ready and willing to purchase ten thousand acres of the said lands at the said price provided the defendant's said representations were correct, and that the said sale failed because of the inaccuracy of the defendant's representations that the said Railway Company had so consented or agreed to construct a branch railroad into the said coal lands, then the plaintiff is entitled to recover the said stipulated sum of $2.50 per acre on the ten thousand acres, or $25,000 in all."

This was given, and the defendant took a general exception.

It is objected to this ruling that the jury was not required to find and could not have found that any particular land was agreed upon. But it at least would have been warranted in finding that the plaintiff had done in this respect all that his bargain required him to do. The agreement failed for a wholly different reason, and no difficulty in completing the sale arose on that ground. We are of opinion that the objection is entitled to no consideration, especially upon a mere general exception and upon a point not taken in the trial court. *McDermott* v. *Severe,* 202 U. S. 600, 611. · A second objection taken is that the condition of the consent to purchase was misstated; that the condition was not that the defendant's representation was correct, but that the railroad should agree to build. But this is evidently a point that should have been called to the attention of the court. We cannot doubt that the plaintiff's counsel and the judge meant to state what the letters showed to have happened, and would have stated it more exactly if the inaccuracy had been pointed out. Probably in speaking of the defendant's representations proving correct, statements of past facts were less referred to than those sounding in warranted prophecy. But the instruction was justified as it stood. If the defendant had had such an agreement as at one time he

gave the plaintiff to understand, no doubt the purchaser would have been content and the sale would have been made.

One or two subordinate objections need only a word. It is said that the instructions did not require the jury to find that the owner and purchaser had agreed on terms. But this is best answered by reading the instruction. What is meant is that on the evidence there were possible points of disagreement open. This may or may not be true. But a finding that the parties had agreed was warranted and was presupposed in the request. So as to the ability of the purchaser. No question ever was raised about it; the defendant was satisfied with it, and it is questioned here only as a technical means of getting a large and doubtful verdict set aside. It is urged, faint-heartedly, that a binding agreement was necessary before a commission was earned. This is not the prevailing view, and could not be the law in a case like this, where the jury must have found the defendant liable on a contract with the broker that might be performed before an absolute agreement with the purchaser should be reached.

The ruling requested for the defendant was as follows:

"If the jury believe from the evidence that any *bona fide* purchaser was actually found by the plaintiff for 10,000 acres of said land as claimed in the declaration, upon the representations of said plaintiff to said purchaser as to the existence of a certain agreement between the defendant and the Southern Railway Company concerning the construction of a branch railroad into said lands and the purchaser did not rely on the said statements and representations of said plaintiff, but with the knowledge or coöperation of said plaintiff and at his suggestion sought and undertook to verify the truth of such statements and representations during the pendency of the negotiations for the purchase of said land before any transaction was closed for the purchase thereof, and that said purchaser had the opportunity of investigating, ascertaining and verifying the truthfulness of such statements and representations, and took advantage of that opportunity by interviews,

conferences or written communications, either personally or by attorney, or by others, with the president and first vice-president of the Southern Railway Company, for the purpose of verifying the said statements and representations so made by the plaintiff as to any agreement existing between the defendant and Southern Railway Company in regard to the construction of the said branch railroad, and ascertained from the said officers of the said Railway Company, from time to time during said negotiations and before September 15, 1902, the date upon which it is alleged in the declaration that said purchaser was found, that no agreement existed between the defendant and said Southern Railway Company to build said branch railroad, but that the subject of building such branch railroad had only been discussed, and that the building thereof depended on the development and improvements to be placed on said land prior to the construction of any railroad, in the way of opening coal mines, establishing coke ovens, or furnishing the railroad with a sufficient amount of tonnage, and that said plaintiff and alleged purchaser had full knowledge and information from the proper officers of the Southern Railway Company of all the facts relating to the conditions upon which said branch railroad would be constructed and of the non-existence of any agreement between the defendant and Southern Railway as alleged, then the defendant is not responsible for the non-appearance of the alleged sale or purchase of the land between the plaintiff and the alleged purchaser, and you should find for the defendant."

As to this request we must repeat that it does not matter how much or how little the purchaser relied upon the defendant's representations if the plaintiff relied upon them and obtained a purchaser ready and able to purchase upon the basis that the defendant's representations to the plaintiff were true. That the plaintiff did rely upon them until the time when, on August 25, he announced Easter's readiness to purchase, hardly is open to dispute. But the judge told the jury that if the plaintiff at the beginning had made inquiries of the railroad and

found that it would not build, he could not complain. The judge called attention to the failure to specify any time at which the plaintiff began to inquire, and said what we understand to mean that the prayers were based on the theory that if, after the purchaser was ready to complete the sale and the question as to the railroad alone prevented it, the purchaser made an attempt to induce the railroad to build,-and so discovered the truth, and thereupon refused to go on, the plaintiff could not recover. At all events, he said enough to warn the defendant to make some necessary amendments. He gave as his reason for refusing the instructions asked that they did not undertake to refer to any time prior to the consummation of the sale. The request assumed that no agreement had been reached until September 15, on evidence which it has not been necessary to state. But the plaintiff's argument was that he had earned his commission on August 25, and there was evidence on which his conclusion might be sustained. On the instructions given we have no doubt that the jury understood the true conditions of the plaintiff's case. They were told in terms that if the plaintiff was to recover they must find that the plaintiff did his work and found a purchaser, relying on the defendant's representations, if he made them, and that the purchase failed because they were inaccurate and the railroad had not agreed to build.

*Judgment affirmed.*