PACIFIC TELEPHONE & TELEGRAPH CO. v. HOFFMAN et al.

(Circuit Court of Appeals, Ninth Circuit.    October 20, 1913.)

No. 2,192.

1. TELEGRAPHS AND TELEPHONES (§ 15*)—INJURIES FROM MAINTENANCE—OBSTRUCTIONS IN HIGHWAYS—CONCURRING CAUSE.

Where plaintiffs' automobile, after crossing a railroad track at night, struck a guy wire attached to one of defendant's telephone poles and extending into the highway near to the traveled part of the road, resulting in the injuries complained of, and the testimony was sufficient to show that the wire, if not the sole cause, was at least a concurring or successive cause of the accident, defendant was not entitled to a verdict on the ground that, as between the obstruction caused by the railroad crossing and the guy wire, the evidence was insufficient to show which caused the accident, and that the jury should not be permitted to guess or speculate between such causes.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*]

2. TELEGRAPHS AND TELEPHONES (§ 20*)—OBSTRUCTIONS IN HIGHWAYS—INJURIES TO TRAVELERS—QUESTION FOR JURY.

Where an automobile, driven at a high rate of speed at night, first struck a railroad crossing and then a guy wire attached to one of defendant's telephone poles and extending into the highway, resulting in injuries to the car and the occupants, whether the railroad crossing or the wire was the proximate cause of the accident, and how far the preceding event of the car striking the crossing operated in producing the final catastrophe, *held* for the jury.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 13; Dec. Dig. § 20.*]

3. NEGLIGENCE (§ 61*)—PROXIMATE CAUSE—CONCURRING CAUSE.

Where concurring or successive acts of negligence of numerous persons combined caused plaintiff's injury, he may recover of either or both, and

neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 74, 75; Dec. Dig. § 61.*]

4. TELEGRAPHS AND TELEPHONES (§ 15*)—OBSTRUCTIONS IN HIGHWAY—"NUISANCE"—GUY WIRE.

Rem. & Bal. Code Wash. § 8308, provides that it is a public nuisance to obstruct or encroach on a public highway, and section 8309 declares that nuisance consists in unlawfully obstructing a highway so as to render it dangerous for passage. Section 9314 authorizes telephone companies to maintain their lines and erect their poles along highways in such a manner as not to incommode the public use of the highway. *Held*, that a guy wire attached to a telephone pole and anchored at a point near the traveled part of the highway was a public "nuisance," if its location endangered the safety of travelers or tended to obstruct or render dangerous their passage over the highway.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*

For other definitions, see Words and Phrases, vol. 5, pp. 4855–4864; vol. 8, p. 7734.]

5. TELEGRAPHS AND TELEPHONES (§ 20*)—OBSTRUCTIONS—NUISANCE—QUESTION FOR JURY.

In an action for injuries to plaintiffs and to an automobile by the machine striking a guy wire attached to one of defendant's telephone poles and anchored near the traveled part of the highway, whether the wire was in such a position as to obstruct or render dangerous the passage over the highway, so as to constitute a nuisance, was for the jury.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 13; Dec. Dig. § 20.*]

6. TRIAL (§ 279*)—INSTRUCTIONS—EXCEPTIONS—SUFFICIENCY.

Exceptions to instructions, failing to specify the grounds so as to notify the trial judge of the specific objection are insufficient.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 690; Dec. Dig. § 279.*]

7. TELEGRAPHS AND TELEPHONES (§ 15*)—OBSTRUCTIONS IN HIGHWAY—GUY WIRE.

Where a telephone company was authorized to construct its line along a highway in such a manner and at such points as not to incommode the public use of the highway, and pursuant to such authority constructed a guy wire attached to a pole and anchored at a point near the traveled part of the way so as to endanger public travel, the wire constituted an obstruction and rendered the telephone company liable for injuries to a traveler resulting therefrom.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*]

8. TELEGRAPHS AND TELEPHONES (§ 20*)—OBSTRUCTIONS IN HIGHWAY—INJURIES TO TRAVELERS—INSTRUCTIONS.

In an action for injuries to travelers on a highway by an automobile coming in contact with a guy wire attached to defendant's telephone pole and anchored near the traveled part of the way, after the automobile had passed at high speed over a railroad crossing, the court charged that, if the machine was driven at an unlawful speed, and it was known to plaintiffs or either of them that it was being driven in excess of 24 miles an hour and "that to drive the same at the rate of speed it was being driven in the nighttime was dangerous," and if either plaintiff having such knowledge failed to warn the driver or request him to stop and permit such plaintiff to get out, if he or they had time and opportunity to do so, then such plaintiff voluntarily committed himself to the action

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the driver and was responsible for his own act in failing to take precautions, and, if in addition thereto such rate of speed was shown to have contributed to the accident, then such plaintiff could not recover. *Held*, that such instruction was not objectionable in that the quoted clause in effect charged the jury that it was not sufficient to charge plaintiffs with contributory negligence unless they knew that such unlawful speed was dangerous in the nighttime.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 13; Dec. Dig. § 20.*]

In Error to the District Court of the United States for the Southern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Consolidated actions by Otto Hoffman, by E. J. Morrison, by Clarence E. Maxfield, and by George F. Mottet and others, against the Pacific Telephone & Telegraph Company. From a judgment in favor of the plaintiff in each case, defendant brings error. Affirmed.

The writ of error in this cause brings up for review four separate actions: One by Otto Hoffman against the Pacific Telephone & Telegraph Company; a second by E. J. Morrison against the Pacific Telephone & Telegraph Company; a third by Clarence E. Maxfield against the Pacific Telephone & Telegraph Company, and a fourth by George F. Mottet, S. V. Davin, and Xavier F. Michellod against the Pacific Telephone & Telegraph Company.

The suits of Otto Hoffman, E. J. Morrison, and Clarence E. Maxfield, as individuals, against the Pacific Telephone & Telegraph Company, were actions for personal injuries sustained by each of the plaintiffs, by reason of an automobile in which they were riding in an easterly direction along the public highway near the town of Walla Walla, in the state of Washington, coming in contact with a guy wire which was attached to and used as a brace or support for one of the poles of the telephone company, erected on the northerly boundary of the highway. The fourth suit was an action brought by George Mottet, S. V. Davin, and Xavier F. Michellod, as owners of the automobile, against the telephone company, to recover damages for injury to their automobile by reason of the accident.

The roadway over which the automobile was passing at the time of the accident was a public highway known as the Walla Walla and Wallula Road, connecting the city of Walla Walla and the town of Wallula almost due westward, and about 30 miles distant. Between these two points run also the tracks of the Oregon, Washington Railroad & Navigation Company's branch line. The public highway is 60 feet wide, with a strip of macadam 18 feet wide running approximately through the center of the roadway. From the city of Walla Walla the highway runs on the south side of and parallel with the railroad track to a point about 1¼ miles west of that city, where the highway turns and crosses the railroad track from the southerly to the northerly side at almost a right angle, and then turning to the left proceeds in the same general direction to the west. The crossing of the highway over the railroad track was, at the time of the accident, planked between the rails to a width of about 24 feet. Along the highway are the poles and wires of the defendant's telegraph and telephone line. To the east of the railroad crossing the defendant's poles and wires are on the north side of the highway, but at the crossing the poles and wires are transferred to, and continue west on the south side of the highway. At a point east of the crossing and on the north side of the highway, and about 25 feet east of the south rail of the railroad track, stood a telephone pole to which was attached a guy wire. This guy wire was less than one-half inch in diameter, and was used to support and brace the pole in an erect position. The wire extended from a point near the top of the pole southerly in the direction of the center of the highway, to the ground, where it was firmly and securely anchored and embedded at a point about 9 feet from the base of the pole to which it was attached. From

the foot of the guy wire to the beaten roadway was 31 inches, and from the edge of the beaten roadway to the macadam was a distance of about 2½ feet. The appearance of the highway was that at one time it had been graded for its entire width of 60 feet; but, as is usual with country highways, the entire width was not in actual use by vehicles passing over the highway. The middle strip of macadam, 18 feet in width, in addition to a few feet on either side, was sufficient to accommodate the general traffic.

The accident which gave rise to these actions occurred at about 9 o'clock on the evening of April 2, 1910. The plaintiffs in the first three actions, Otto Hoffman, E. J. Morrison, and Clarence E. Maxfield, were riding in an automobile driven by one Mullinix, who is not a party to either of these actions. The automobile was owned by George F. Mottet, S. V. Davin, and Xavier F. Michellod, the plaintiffs in the last-named action. The automobile in charge of the driver, Mullinix, with Hoffman in the front seat with the driver, and Morrison and Maxwell in the rear seat, had passed down the Walla Walla Road in a westerly direction from the city of Walla Walla, to a point beyond the railroad crossing, and was returning eastward along the highway. When approaching the railroad crossing, Morrison said to the driver, "Look out for the crossing." For the purpose of taking the curve turning to the right at the crossing, the automobile was steered by the driver to the left or north side of the highway, and by reason of the slippery condition of the road, caused by recent rains, the automobile skidded still further to the left, causing the front and rear wheels on the left side of the machine to pass from the beaten road into the grass bordering the road; the right wheels remaining on the macadamized portion of the road. In crossing the railroad tracks the left wheel missed the planking between the rails, causing a jar to those in the automobile.

The testimony introduced on behalf of the plaintiffs tended to show that the occupants of the car experienced only a slight jar when they crossed the tracks of the railroad, and that they were not thrown out; that the driver was trying hard to turn the machine as they approached the crossing; that it had been raining and the road was wet and slippery; that they had been going at about 30 miles an hour, but before they reached the crossing they met a buggy, when they slowed up, and kept slacking up until they reached the crossing. The plaintiff Hoffman testified that "Mr. Morrison made some remarks, told the driver to be careful about the railroad crossing, and the first thing we knew we were going over the railroad crossing, over the railroad tracks up the right of way, and we hit this guy wire, and of course the car upset." On cross-examination this witness testified: "I remember the car going over the railroad tracks. I could feel a slight jar. It did not throw us out of the car, jarred us a little bit. I noticed we were crossing the rails." After crossing the railroad the automobile continued in the same direction until it struck the guy wire attached to the telephone pole, a distance of about 25 feet from the south rail of the railroad track, when the rear end of the car skidded around. The collision resulted in overturning the car, and at a point about 20 or 22 feet east of the guy wire the car stopped and was found standing at right angles with the road; the front of the car facing to the north. The plaintiffs Hoffman, Morrison, and Maxfield were thrown to the ground at some point east of the railroad crossing, whereby they received the injuries complained of, and the automobile was damaged. The appearance of the car was that the guy wire had struck the car between the hood and the front fender, breaking the top and the glass shield and the fender, and damaging the wheels and other parts of the car.

An examination of the ground was made on the morning after the accident by W. H. Buck, a witness for the plaintiffs, who was asked: "Q. When you went there, how did you find the situation with reference to the automobile and the guy wire? A. When I went down there in the morning, I went down more to see the accident than anything else. I found the automobile had left the crossing—there was a plank crossing in it at the time—going over the south rail of the railroad track there four or five ties from the end of the plank crossing at that end. The left wheel of the automobile had skidded; well, in fact, both of them, but the left-hand wheel showed very plainly beside the macadam road in the crossing. Q. As it approached the— A. As it

was approaching the wire. Now, this is on the south side of the railroad track. Q. That was between the railroad track and the guy wire? A. And the guy wire."

The testimony on behalf of the defendant tended to show that where the automobile crossed the railroad tracks all of the wheels were off of the plank crossing; that the marks on the ties showed that they had been badly splintered by the passage of the car; that the rails presented an obstacle of 10 or 12 inches in height. A witness named Baker, introduced on behalf of the defendant, was asked on direct examination: "Q. Well, immediately or anywhere near the south side of the railroad track did you find any car marks, automobile tracks? A. No, I could not see any indication of a car having been across or in between the tracks, between the point where it struck and where I said within 30 feet of the pole, I could not say that the car had struck the ground at all; there was nothing to indicate that. Q. Did you look at it with that in your mind? A. Yes, I was looking at it to see how far the car jumped. Q. And how far, from your examination, would you say that it did? A. Well, I could see that it lit, but I don't think it lit closer than 25 or 30 feet anyhow, because there was not any tracks up there to obliterate that ground, and there weren't any signs of any car striking there; that is, between the pole and where the car went off on the track, is approximately 60 feet." On cross-examination he was asked: "Q. Now, Mr. Baker, when you were discussing the question of the car lighting and testified, you were indulging then largely in speculation, were you? A. I saw no tracks between where those steps were around here obliterating the track that might have been there; between there and where the car first struck the tracks, the railroad tracks, or the ties, I saw no track whatever indicating that the car had passed over that ground."

There was evidence that the car weighed 3,880 pounds and carried a tire 48, 2 by 4½.

The complaint in each action was originally filed in the superior court of the state of Washington in and for the county of Walla Walla, but the cases were subsequently transferred for trial to the United States District Court for the Eastern District of Washington, Southern Division.

By stipulation of counsel, the actions of Otto Hoffman, E. J. Morrison, and Clarence E. Maxfield, as individuals, against the telephone company, for damages for personal injuries, and the action of George F. Mottet, S. V. Davin, and Xavier F. Michellod, against the telephone company, as owners of the automobile, for damages for injuries to it, were consolidated and tried as one action before a jury.

At the close of the testimony introduced by the plaintiffs, the defendant challenged the sufficiency of the evidence to sustain a verdict in favor of the plaintiffs, or any of them, and against the defendant, and moved the court to take the case from the further consideration of the jury and to enter a judgment for the defendant. The grounds upon which the motion was based were that the evidence adduced by the plaintiffs failed to show that the defendant was or had been guilty of any negligence in connection with the matters and things charged in the complaint, and that the evidence further showed that the plaintiffs, and each of them, had been guilty of contributory negligence, and that their contributory negligence brought about the injuries and damages alleged to have been sustained by them respectively. The motion was denied.

At the close of the case the defendant renewed its motion made at the close of the plaintiffs' testimony, and again challenged the sufficiency of the evidence on the whole case to warrant a verdict in favor of the plaintiffs, and moved the court to take the case from the further consideration of the jury and to enter a judgment in favor of the defendant. This motion was also denied.

The jury returned four separate verdicts: One in favor of the plaintiff Otto Hoffman, and against the telephone company, in the sum of $6,000; a second in favor of the plaintiff E. J. Morrison, and against the telephone company, in the sum of $5,000; a third in favor of the plaintiff Clarence E. Maxfield, and against the telephone company, in the sum of $800; and a fourth in favor of the plaintiffs George F. Mottet, S. V. Davin, and Xavier F. Michellod, and

against the telephone company, in the sum of $500. Judgments were entered against the defendant, and in favor of the plaintiffs, respectively, for the amounts stated above; from which judgments the defendants prosecuted this writ of error.

Post, Avery & Higgins, F. T. Post, and A. G. Avery, all of Spokane, Wash., for plaintiff in error.

C. C. Gose and W. B. Mitton, both of Walla Walla, Wash., for defendants in error.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. It is contended by the defendant that as between the obstruction to the passage of the automobile caused by the guy wire, and the obstruction caused by the railroad crossing, the evidence is not sufficient to show that the guy wire was the cause of the accident, invoking the rule that where one of two or more things may have caused the accident, for one of which the defendant is responsible, and for the other he is not, it is not for the jury to guess or speculate between these causes, and find that the negligence of the defendant was the real cause of the accident, where there was no satisfactory foundation in the testimony for that conclusion. Patton v. Texas & P. Ry. Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 45 L. Ed. 361. The rule is not applicable in this case. There is no question but the car came into collision with the guy wire, and we think there is in the testimony a sufficient foundation for the conclusion that the guy wire, if not the sole cause, was either a concurrent or a successive cause of the accident.

[2] But in appealing to this rule, the defendant seeks to eliminate the guy wire altogether as an independent intervening cause of the accident, basing this theory, it seems, upon the testimony of the witness who, on the morning after the accident, inspected the ground and saw no tracks of the car between the railroad crossing and the guy wire, a distance of about 25 feet. From this testimony the defendant draws the inference that when this car, weighing nearly two tons, met the obstruction of the railroad crossing, it made a clean jump from the railroad crossing to the guy wire, a distance of about 25 feet. The common knowledge of any one of experience would be that such a projection of the car would be impossible; but the obvious answer to such a theory, whatever its merit or demerit, is that it was a question of fact for the jury and not a question of law for the court.

But assuming for the defense the more reasonable theory that the car may have been diverted from its course, or the driver lost steering control of it, by the obstruction of the railroad crossing, and the car thereby brought into collision with the guy wire, still it would be a question for the jury to determine how far the preceding event operated in producing the final catastrophe. As said by the Supreme Court of the United States in Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 476 (24 L. Ed. 256):

"In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the obvious

province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new or independent agencies, and this must be determined in view of the circumstances existing at the time."

[3] There is also another well-established rule not to be overlooked in this connection, and that is that, if concurring or successive acts of negligence of numerous persons combined together caused the plaintiff's injury, he may recover damages of either or both, and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury. Supplement to Thompson's Law of Negligence, by White, par. 75. We think that, with respect to this feature of the case, the evidence that the guy wire was one of the proximate causes of the accident was sufficient to go to the jury.

[4] 2. The next question relates to the character of the obstruction considered with respect to its location in the public highway. As has been stated, the public highway was 60 feet wide, and the whole of this width had been dedicated to public use. By section 8308 of Remington and Ballinger's Codes and Statutes of the state of Washington, it is provided that it is a public nuisance to obstruct or encroach upon the public highway, and in section 8309 it is provided that:

"Nuisance consists in unlawfully doing an act * * * which injures or endangers the * * * safety of others, * * * or * * * obstructs or tends to obstruct, or render dangerous for passage * * * any * * * street or highway."

By section 9314 it is provided:

"Any telegraph or telephone corporation, or the lessees thereof, doing business in this state, shall have the right to construct and maintain all necessary lines of telegraph or telephone for public traffic along and upon any public road, street or highway * * * and may erect poles, piers or abutments for supporting the insulators, wires and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the * * * highway."

The pole to which the guy wire in question was attached was located on the northern boundary of the highway at a point where the highway turned from the railroad crossing. The guy wire was anchored and embedded in the ground about 31 inches from the edge of the beaten and traveled portion of the highway, and at a point where an automobile making the turn in the road from the crossing, and the driver not observing the obstruction of the wire, might cut across the protruding curve and strike the wire. The question is: Did this guy wire so located incommode the public use of the highway, or was it a nuisance by reason of the fact that it endangered the safety of others or tended to obstruct or render dangerous passage over the highway?

[5] This was a question of fact to be submitted to the jury with proper instructions. This the court did, instructing the jury that the statute granted to the defendant the right to erect and maintain its telephone poles and lines along the public highway, subject to the condition that they should not be erected so as to incommode the public use of the highway; that, if the jury found from the testimony that the poles were so erected as not to incommode the public use of the high-

way, then the verdict should be for the defendant. To this instruction the defendant, of course, took no exception. The court then referred to sections 8308 and 8309 of Remington and Ballinger's Codes and Statutes of Washington, and, proceeding with its instructions, stated that the grant of a right of way to the telephone company was, of course, subject to the limitation and condition in the statute that any person who placed a permanent obstruction in the public highway, of such character as to endanger the use of the highway for ordinary public travel, committed a nuisance and was liable in damage to any person who was injured by reason of the maintenance of that nuisance without fault on his part. To the latter instruction the defendant excepted, but without specifying the grounds of such exceptions.

[6] These exceptions were not sufficient under the well-established rule in the federal courts requiring that, where a party excepts to an instruction of the court, the ground of the exception must be specified, so that the court may have an opportunity to supply any deficiency or correct any error that may have been made in the instruction before the jury retires from the courtroom. McDermott v. Severe, 202 U. S. 600, 610, 26 Sup. Ct. 709, 50 L. Ed. 1162; Dotson v. Milliken, 209 U. S. 237, 242, 28 Sup. Ct. 489, 52 L. Ed. 768.

But this objection to the exception is not material in this case, since the general exception relied on is that the court did not, as requested by the defendant, instruct the jury to return a verdict for the defendant. With respect to this feature of the case, the defendant contends that the pole and guy wire were lawfully placed, if they did not "incommode the public use of the highway," and that the public use here referred to was the reasonable and ordinary use of the highway, and not every possible use or a use having reference to unusual conditions; that the automobile had no greater right to incommode the ordinary and reasonable use of the highway by the telephone company than the latter had to incommode the automobile in its ordinary and reasonable use of the highway. In other words, these rights were reciprocal, and had reference to the usual and ordinary uses and conditions of the highway.

[7] But the primary and general use of a highway is for travel, and any obstruction that renders it dangerous or unsafe for that purpose is unlawful; and, although a telephone company may have the right to occupy a highway with its poles, yet if it secures them in the highway by guy wires so as to endanger the public travel, or the safety of individuals in the reasonable and ordinary use of the highway, such method of securing and maintaining its poles is an obstruction, and the law declares that such an obstruction is a nuisance, and the act of maintaining such a nuisance negligence. Shearman & Redfield on the Law of Negligence, § 365; Addison on Torts (8th Ed.) p. 890; Thompson's Commentaries on the Law of Negligence, vol. 1, § 1239.

In the case of Sheldon v. Western Union Telegraph Co., 51 Hun, 591, 4 N. Y. Supp. 526, the defendant had constructed a telegraph line along the road in question, and in connection with it maintained a pole at a point where there was an angle in the road, so that the tendency was that the pole would fall away from the road. The pole

was quite close to the fence constituting the boundary of the road. To prevent the pole from falling away from an upright position, the defendant sank a stone close to the traveled part of the highway, fastened a wire to it, carried the wire to the telegraph pole above the ground, and attached it to the pole. By means of this anchor and wire the pole was held firm. There were two apple trees on the same side of the road as the anchor stone, which, when in leaf, prevented the wire being seen by persons using the highway. There was a bank on the opposite side of the road which forced the traveler close to the sunken stone. The plaintiff was driving a team of horses along the road, and, while endeavoring to pass another team, collided with the wire and was thrown from the wagon. The court said:

"The question is a peculiar one in this, that both parties had a right to use the road; the plaintiff because it was a public highway, and the defendant because of legislative permission to use the highway. The first question is: Which right is paramount? Highways are well established and defined in law. The right to use them as they have been accustomed to be used from time immemorial cannot be questioned. The right of the defendant is subject to the public user. The defendant may not use the road so as to obstruct or render dangerous the public travel. If this correctly states the rights of the parties, a case of injury by negligence of the defendant is clearly made out. The wire between the stone and the pole was not easily seen, under favorable circumstances. The wire was so close to the road that it was a dangerous snare to travelers, and, besides this, the road was so narrow by reason of the bank, and the traveler's view was so obstructed by the trees, that the jury was justified in finding the defendant guilty of negligence."

In Wilson v. Great Southern Telephone & Telegraph Co., 41 La. Ann. 1041, 6 South. 782, a guy wire had been erected in order to sustain and strengthen the posts of the defendant company placed on neutral ground on St. Charles avenue, in the city of New Orleans. The posts were situated about three feet six inches from the street, and the guy wire was some six or seven feet above the ground, but not high enough to be clear of vehicles passing on the neutral ground. Outside of the asphalt pavement, and inside of the neutral ground, about 3½ feet from the edge of the pavement, there was located a fire plug. The plaintiff was the driver for an engine company, and in attempting to turn his engine for the purpose of connecting the same with the fire plug it partly went on the neutral ground. The driver was struck by the guy wire and severely injured. The court said:

"The telephone and telegraph company had the undoubted right to erect its poles, and to secure them, but this permission does not authorize them to put them up, and to secure them, by wires strung so as to endanger human life. The city ordinances forbid the use of the neutral ground on St. Charles avenue to carriages and other vehicles; but this prohibition did not authorize the defendant company to erect its wires so as to injure any one who might be trespassing upon the neutral ground. No one, even to protect himself against trespassers, has a right to erect death traps on his premises. The posts were placed in dangerous proximity to the street, and ordinary prudence, and a due regard for the safety of the public, would have dictated that the guy wire should be placed beyond the possibility of injuring any one. Persons using the street without any intention of violating the city law might by accident be driven with a vehicle on the neutral ground. In a case of this kind, it would hardly be considered that he contributed to his own accident if he should be injured by the wire."

It is clear that in the present case there was evidence tending very strongly to show negligence on the part of the defendant in erecting and maintaining the guy wire at the point where it was located on the highway, and that question of negligence was for the jury to determine under appropriate instructions.

[8] 3. It is assigned as error that the court refused to give a requested instruction concerning evidence relating to the unlawful rate of speed of the automobile prior to the accident, and the negligence of the plaintiffs who were riding in the machine at that time, in not protesting to the driver against such unlawful rate of speed. The court gave an instruction to the jury upon that subject as follows:

"If you find from the evidence that the automobile mentioned in this action was driven along the public highway in Walla Walla county at an unlawful speed, and that it was known to the plaintiffs or either of them that it was being driven at a rate exceeding 24 miles an hour, and that to drive the same at the rate of speed it was being driven in the nighttime was dangerous, and if either plaintiff having this knowledge failed to warn the driver or asked him to stop and permit such plaintiff to get out, if he or they had time and opportunity to do so, then such plaintiffs voluntarily committed themselves to the action of the driver of the automobile, and he is responsible, not for the act of the driver, but for his own act in failing to take the precautions which under such circumstances he should have taken, and if, in addition thereto, such rate of speed is shown to have contributed to the accident, then such plaintiff cannot recover in this action."

The objection to this instruction is that it contains this clause:

"And that to drive the same at the rate of speed it was being driven in the nighttime was dangerous."

It is contended that the effect of this instruction was to instruct the jury that it was not sufficient to charge the plaintiffs with contributory negligence, unless they knew that such unlawful rate of speed was dangerous in the nighttime. The objection is without merit. The question was: Did the plaintiffs know that the automobile was being driven at a dangerous rate of speed? If they did, and the rate of speed contributed to the accident, and they did not protest against it, then the jury were justified in inferring that the plaintiffs were guilty of contributory negligence. The automobile was being driven in the nighttime, and the court called the attention of the jury to that fact, which would appear to be a feature of the instruction favorable to the defendant, since a high rate of speed must be more dangerous in the nighttime than in the daytime. We are of opinion that the instruction given by the court was correct and that the case was submitted to the jury with appropriate instructions.

The judgment of the court below is therefore affirmed.