**TWEED v. BUCKNER et al.**

No. 192.

Municipal Court of Appeals for the District of Columbia.

Sept. 28, 1944.

Arthur J. Hilland, of Washington, D. C., for appellant.

Louis M. Denit, of Washington, D. C., with whom A. Leckie Cox and Brandenburg & Brandenburg, all of Washington, D. C., were on the brief, for appellees.

Before RICHARDSON, Chief Judge, and CAYTON, Associate Judge.[1]

RICHARDSON, Chief Judge.

Suit was brought by appellant Tweed, a real estate broker, claiming a commission for services in procuring a purchaser for appellees' property. Trial was by the court which made a general finding for defendant. Judgment was entered pursuant thereto and this appeal resulted.

Confining ourselves to facts which are undisputed, the following appears:

Appellees employed Tweed to find a purchaser for certain residential property, owned and occupied by them. After showing the property to prospective purchasers, Tweed submitted a proposed contract executed by a Dr. Kossow. The price therein stated was $16,950, which was to be paid as follows: $3,500 in cash, the purchaser to place a first trust of $11,000 and to give vendors a second trust of $2,450. The property was then subject to a deed of trust originally for $9,500, of which the unpaid balance of $6,100 matured in installments over a period of years. This trust, it was conceded, was to be paid from the proceeds of the new first trust, after which the remaining proceeds would be paid to appellees.

Dr. Kossow's proposal to purchase was on the usual printed form of real estate sales contract, signed by him, with blank lines for the signatures of the vendors. It was signed by the latter. At the time of their signing the following endorsement was written and signed by Tweed on the reverse blank side of one copy of the contract:

"It is understood that the sellers are not to pay any Bonus—or penalty to pay off loan—on the existing first deed of trust to the Evening Star—or holder of the said deed of trust."

This writing did not appear on the duplicate original of the contract signed by appellees and delivered by Tweed to Kossow.

Immediately thereafter Tweed notified Kossow of the approval of the contract,

---

[1] Two judges of this court constitute a quorum. Act of April 1, 1942, Code 1940, § 11—771.

stating to him that it might be necessary to pay a bonus for the release of the existing mortgage; and Kossow agreed to contribute a maximum $43 for this purpose. This mortgage had been placed by the B. F. Saul Company and the secured notes were held by the Evening Star Newspaper Company.

Tweed conferred with Saul Company and with an official of the Evening Star Company and found that they were unwilling to accept pre-payment of their mortgage but offered to increase the loan to $9,500. Kossow agreed to accept this loan and to pay in cash the $1,500 difference between the amount and $11,000.

The parties met at the title company on May 6, 1943, for the purpose of closing the sale. Kossow was then prepared and offered to execute the necessary papers, to make the $3,500 cash payment required by the contract, and to pay the $1,500. The vendors refused to complete the sale on the ground that the contract required that the first trust be $11,000 and not $9,500. The deed to Kossow was, however, executed and deposited with the title company with a letter of instructions prepared by vendors' counsel who had been present throughout the discussion. We quote therefrom:

" * * * This deed is not to be recorded unless and until the terms of the contract of sale dated April 18, 1943 are strictly complied with by the purchasers, i. e., that they place a first lien deed of trust on the property of $11,000; a $3500 cash payment; the balance secured by a deferred purchase money trust; * * *."

It was agreed that the parties would meet at the title company to settle the matter on May 18th. On May 12 appellee Leon Buckner called at the title company and withdrew the deed and letter of instruction.

When the parties met at the title company on May 18th, the vendors again insisted that the purchaser must secure a release of the existing mortgage without cost to them and place a new mortgage of $11,000. They refused to proceed with the settlement.

There was uncontradicted testimony that appellee Leon Buckner stated to Tweed, shortly after the contract had been signed,

that he did not intend to complete the sale. There was also testimony that Leon Buckner had sought out an official of the Saul Company and of the Evening Star Company and requested them not to increase the existing loan. This he denied. He stated, however, that he had conferred with an official of the Saul Company and was sent by him to Mr. Kauffman of the Evening Star Company; that his object was to ascertain whether or not they would increase the loan. However, he quotes Mr. Kauffman as saying he would not "play any favorites" and as terminating the interview abruptly with the statement "I will tell you as I did Mr. Tweed, I am not influenced by either party in this case."

■ The law is well settled in this jurisdiction, as elsewhere, that to entitle a broker to claim commissions on the sale of real estate he must produce a purchaser ready, able and willing to purchase upon the vendor's terms.[2] As stated in Heurich v. Sullivan, 52 App.D.C. 95, 281 F. 599, 601:

"It is settled law that a broker, before he is entitled to his commission, must not only find a purchaser able, ready, and willing to buy, but upon the identical terms authorized by his principal. It is a rule of agency which admits of no exception, and courts do not hesitate to strictly enforce it. Any other course would open the door to fraud, and place the principal at the mercy of his agent."

■ Performance of the broker's undertaking may be evidenced by an executed agreement of sale, by the submission to his principal of an acceptable offer which the latter refuses to accept, or by the production of a purchaser "able, ready and willing" to purchase upon the authorized terms.

Point is made by appellees that there was no completed agreement, entitling the broker to his commission, in that the proposed contract signed by Kossow was accepted conditionally by appellees, this condition being that endorsed on the reverse side of the paper by the agent Tweed and signed by him; that this was in legal contemplation a counter-offer requiring Kossow's unqualified acceptance, and that such condition was not satisfied by his agreement to contribute $43 to the release of the existing mortgage.

There is considerable doubt whether plac-

[2] Dotson v. Milliken, 209 U.S. 237, 28 S.Ct. 489, 52 L.Ed. 768; Jones v. Holladay, 2 App.D.C. 279; Battle v. Price, 63 App.D.C. 326, 72 F.2d 377; Burke v.

Lockhart, 8 Cir., 287 F. 117; Van Winkle v. Harris, 137 Ga. 43, 72 S.E. 424; Parker v. Stubbs, 139 Ga. 46, 76 S.E. 571.

ing this endorsement on the back of one copy of the paper, without reference to it in the signed contract, made it a part of the contract between vendors and purchaser. It was not on the copy which the agent delivered to Kossow, and, therefore, was not notice to him and afforded him no more protection than had it been written by Tweed in a letter to the vendors or in some other separate paper. Nevertheless, it would be binding upon the agent, either as a limitation of his authority to deliver the signed contracts or as an independent promise creating a personal liability, and would defeat his claim for commissions or authorize an action against him for indemnity had the sale failed because of his non-compliance, or had it been completed at the vendor's expense.

In our view of the case, however, the right to a commission does not depend solely upon the existence of an enforceable contract between vendors and purchaser.[3] The document, whether complete, or invalid for want of acceptance of a condition, furnished a definite statement of the terms upon which the owners would sell to Kossow. The letter of May 6, in part quoted above, expressly confirmed those terms. Was the tender of performance on May 6th a sufficient compliance therewith? If so, the vendors being put to no expense in connection with the existing mortgage, appellant was entitled to his commission for having produced a purchaser who was then ready, able and willing to buy upon vendors' terms.[4]

The sole ground upon which appellees then refused to proceed with the settlement was that the new deed of trust was for the sum of $9,500 and not for $11,000 as stipulated in the agreement. It was not contended that the tendered performance varied from the contract in other particulars. If we analyze their contention we find no resulting diminution in the amount of cash they were to receive in the settlement. Upon their theory they were entitled to receive the difference between $6,100 and the $11,000 proceeds of the new trust, or $4,900. In the proposed settlement they would have received the difference between the $6,100 and the $9,500 trust, or $3,400 plus the $1,500 additional cash deposited by the purchaser, a total of $4,900; the $3,500 cash payment was unaffected. The $2,450 second trust note would have been subordinate to a lien of $9,500 instead of one of $11,000.

The question we have to decide is whether this represented such a variance of terms as released appellees from liability to the broker.

It will be noted that the contract which fixed the terms of sale contained no limitation in respect of the new first trust except that it was to be placed in the amount of $11,000. It might be payable "on or before", and the purchaser could have reduced it to $9,500 by payment of $1,500 to the holder the day it was given. In construing the contract it is the duty of the court to determine the intent of the parties in the light of the surrounding circumstances and to read the words used to express that intent.[5] Here we think the intent reasonably deducible from the fixing of a specific amount of a first trust which the purchaser was to secure on the property was to aid him in financing its purchase and was to create a limitation on that amount. The only concern of the vendors was in seeing that their loan of $6,100 was discharged and in fixing the maximum amount of the lien taking precedence over their second trust. The situation is not unlike that presented in Morrison v. Mioton, 163 La. 1065, 113 So. 456. There the purchase price was to be paid in cash. The contract provided that the purchaser would apply for and procure a loan on the property in a certain amount. This he did not

[3] 9 C. J., Brokers, § 93, p. 609; 12 C.J. S., Brokers, § 89; Holden v. Starks, 159 Mass. 503, 34 N.E. 1069, 38 Am.St.Rep. 451.

[4] In Fiske v. Soule, 87 Cal. 313, 25 P. 430, the vendor refused to accept the proposed contract because it provided for release of the purchaser upon forfeiture of the deposit. The purchaser thereupon tendered payment of the purchase price in cash. This, it was held in an action by the agent for commissions, eliminated the defense that the contract as submitted was rejected by the vendor.

[5] Ryan v. Ohmer, 2 Cir., 244 F. 31, 34, from which we quote:
" * * * It will also be admitted that the intent of the parties, as expressed in the writing they have signed, must govern the court in determining the rights of the parties as derived therefrom. Indeed, the rule is that greater regard is to be had to the clear intent of the parties than to any particular words they may have used in the expression of their intent. Canal Co. v. Hill, 15 Wall. 94, 21 L.Ed. 64; Hoffman v. Aetna Fire Ins. Co., 32 N.Y. 405, 88 Am.Dec. 337. * * *"

do. He was able to finance without the loan. The vendors refused to settle, claiming that in failing to apply for and secure the loan he had not complied with the terms of the contract. It was held that the provision was for the benefit of the purchaser; that it was a privilege he might forego, and his failure was not a defense to his suit on the contract.

While the statement that the agent must find a purchaser on the "identical" terms authorized, quoted from Heurich v. Sullivan, supra, and repeated in Battle v. Price, supra, is very broad and far reaching, we do not regard it as applicable to the present situation. It was a paraphrase of similar statements to be found in opinions in cases from many jurisdictions.[6] The court was careful to point out wherein the deviation from the authority granted the broker resulted in detriment to the vendor. And in the cases which the court cited as authority, as well as other cases, expressing the same views, the courts have uniformly indicated a particular detriment to the vendor resulting from the variance from the authorized terms.[7]

■ Where no detriment to the vendor may result, it has been held that a variance may be so inconsequential that the refusal of the vendor to complete the sale is capricious and can not deprive the agent of his commission.[8] Especially should this be so when the vendors, as here, were plainly actuated by a determination not to complete the sale and assigned no reason for refusing to close the transaction other than their decision to stand upon the letter of the contract.

In Parker v. Stubbs, supra, (footnote 2) the contract submitted to the owner provided for interest to begin on January 1, instead of the date of closing. In denying a recovery the court characterized the offer as one "[differing] in substantial particulars" from the authorized terms. Under similar circumstances, in Riker v. Post, 125 App.Div. 607, 110 N.Y.S. 79, 80, tender was made of the difference in interest. "But" the court said "the defendant declared that this was a technicality which would make it unnecessary to close the deal, and declared the property out of the market. * * * There is no doubt of the employment; no doubt that the plaintiff produced a purchaser who was ready, willing, and able to comply with the defendant's terms; and to permit the latter to avoid her obligations upon a mere quibble would be to pervert the ends of justice, rather than promote them."

■ In the light of the surrounding circumstances the provision for a first trust of $11,000 was intended as a limitation on the amount the purchaser might borrow on the property to finance its purchase, a privilege he might waive or exercise within the prescribed limitation. And here there was no possible detriment to the vendors resulting from the claimed variance between the tendered settlement and the contract as they construed it, any such variance was trivial and inconsequential to them, and the refusal to complete the sale was without legal justification. Under these circumstances, in holding as we do, we are not relaxing the requirement of good faith on the part of a real estate broker which in Heurich v. Sullivan, supra, was in apt words made a prerequisite to his recovery of compensation. It follows that the judgment must be reversed and a new trial ordered.

Reversed.

---

6 See cases cited, footnote 2.

7 "Identical terms", as used in that opinion, may well be interpreted as was a similar expression in Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065. In Boling v. Buckeye Incubator Co., D.C.S.D. Ohio, 33 F.2d 347, 348, it was said:
"* * * the word 'identical,' in its application to the changes and alterations, must be construed in a not too restricted manner. Its proper construction might be expressed in the phrase *without material substantial change*. In its application to this case, the question for solution will be whether the changes or series of changes may be found to be *substantial* as distinguished from nonessential, * * * and whether such are *material* * * *."

8 Burke v. Lockhart, supra, (footnote 2); Ransom & Randolph Co. v. Pinches, 2 Cir., 234 F. 847; Mims v. Reid, 4 Cir., 286 F. 900; Spears v. Carter, 224 Mo.App. 726, 24 S.W.2d 717. See also 9 C. J., Brokers, § 103, p. 626; 12 C.J.S., Brokers, § 95; 12 C.J.S., Brokers, § 86, p. 196.