## HEYWARD v. KIRSCH.
### No. 985.

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 13, 1950.

Decided Dec. 19, 1950.

Huver I. Brown, Washington, D. C., with whom Charles S. Brown, Washington, D. C., was on the brief, for appellant.

Arthur L. Willcher, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

The trial court found in favor of Kirsch, a real estate broker, for a commission earned in securing a purchaser for property of the owner, Heyward. This appeal is brought by Heyward.

Following are the facts as found by the trial court and which are either not in dispute or are supported by substantial evidence: In May 1949 Heyward signed a listing card giving Kirsch a sixty-day exclusive right to sell the property at a minimum price of $13,500, and agreeing to pay a five per cent commission. Heyward signed as owner and told Kirsch's salesman that he wanted a man named Love, who had been the tenant of the premises for twenty years, to have first opportunity to buy. Shortly thereafter the salesman brought to Heyward an agreement signed by Love to purchase the property for $11,

000 with a first. trust of $5500. Heyward then for the first time revealed that his daughter had an interest in the property and went with the salesman to her home to discuss the deal with her. There it was agreed that a $500 increase in the purchase price and first trust would make the contract acceptable to Heyward and his daughter. A few days later Heyward was informed that his terms had been met and the salesman tendered to him a new contract, calling for a total price of $11,500 with a cash payment of $3,500 and a first trust of $6000. At Heyward's request the contract was taken to the office of his attorney where the following provision, which had been requested by appellant's daughter, was placed on the back thereof: "In settlement of the purchase price of the premises, the Title Company is hereby directed to pay the sum of Five Hundred Dollars ($500.00) direct to Mary Heyward Wimms, now Mary Heyward Wildridge, name changed by marriage."

When this was done Heyward announced "that he was satisfied with the contract and with the purchaser." It was then taken to the daughter but she refused to sign, telling the salesman 'that she was not getting enough money from the sale. Some months later Heyward told the broker that his daughter had consented to sign but the purchaser was not then in position to complete the deal.

Appellant contends that the judgment was contrary to law because appellee did not offer proof of the financial ability of the intended purchaser to complete the purchase. We cannot agree, in view of the particular circumstances of this case, that omission of affirmative proof of the purchaser's financial ability was fatal to the broker's claim.

 It is of course true that in the ordinary case of this kind an agent must show that he produced a purchaser ready, able and willing to buy on the terms authorized.[1] But this is quite different from the ordinary case in at least two important

respects. In the first place the prospective purchaser was long and well-known to the owner as a satisfactory tenant of the property to be sold, and was by the owner himself recommended to the agent for first consideration as a prospective purchaser. In so doing the owner in effect at least helped select his own purchaser, instructing the broker to deal with him. This the broker did, succeeding as we have seen in binding the desired purchaser to an agreement on terms expressly approved by the owner.

In the second place, it is clear that the purchaser was not only acceptable to the owner from the beginning and remained so during all the negotiations, but was fully accepted by him when the second signed contract was presented by the broker. When the clause was added to satisfy his daughter, Mr. Heyward "told the agent that he was satisfied with the contract and with the purchaser." Before that he "told him that he would sign the contract if the first trust was increased to $6,000.00." In giving his own testimony defendant "testified that the prospective purchaser, Edward W. Love, had been a satisfactory tenant in the property for better than 20 years. He admitted that he had advised the agent that the tenant was satisfactory and he wanted him to be given the first opportunity to buy the property."

From all of these circumstances and there being no real dispute or contradiction on the subject, we think the trial judge was warranted in concluding that defendant had recognized and approved the purchaser's financial standing and his ability to complete the purchase.

Appellant relies on Dreyfuss v. Boling, D.C.Mun.App., 60 A.2d 230, in support of his position. That case, which states the general rule relative to the burden of proof on a suing broker, presents no applicable precedent here. There is a superficial factual resemblance between that case and the instant one in that both involve a sale which failed because of the refusal of a co-owner to join; but there the resemblance ends.

---

1. Long v. Murchison, D.C.Mun.App., 62 A.2d 370; citing Heurich v. Sullivan, 52 App.D.C. 95, 281 F. 599; Dreyfuss v. Boling, D.C.Mun.App., 60 A.2d 230; Tweed v. Buckner, D.C.Mun.App., 39 A. 2d 203.

In the Dreyfuss case the three proposed purchasers (three properties were listed) were complete strangers to the principal; whereas here, as we have seen, the owner had known the prospective purchaser, Love, as a satisfactory tenant of this very property for twenty years. Further, the principal in the Dreyfuss case refused from the outset to accept the offers presented although they met his terms. Here the owner, with ample opportunity to consider the acceptability of Love as a prospective purchaser, clearly demonstrated his satisfaction, indeed his preference, for him, and left no doubt that he approved him as a purchaser. Our holding is, we think, generally supported by the ruling in Dotson v. Milliken, 27 App.D.C. 500, affirmed 209 U.S. 237, 28 S.Ct. 489, 52 L.Ed. 768.[2]

▪ Under a general assignment of error entitled "Judgment was not supported by evidence," appellant argues in effect that the broker's right to compensation was contingent upon his success in securing the consent of appellant's daughter to the sale. It is plain that the trial court found that the broker's right to commission was not so conditioned and that his duty was only to find a purchaser ready, able and willing to buy on the terms agreed on at the second conference between the parties. Considering the evidence as a whole, we are satisfied that this was a correct and sound view of the matter. To fashion from the facts before us an implied duty on the broker to procure a contract actually signed by all parties would be nearly tantamount to requiring that he effect an actual sale in order to earn his commission. From the time of Mannix v. Hildreth, 2 App.D.C. 259, that has not been the law in this jurisdiction.

▪ Another argument advanced by appellant is that the plaintiff failed to produce evidence that he had secured a loan of $6000 on the property as required by the contract. But the plaintiff's testimony was uncontradicted that two days after defendant told him he would approve the deal if a first trust of $6000 was secured, he obtained a commitment from a local building association to a loan of that amount. In his brief appellant says that the broker offered no other evidence on the subject and did not produce any writing, memorandum, document or person to support his own statement. We do not understand that testimony of this nature must be corroborated in order to be believed. The trial judge was entirely justified in accepting plaintiff's statement that he had obtained the commitment for the loan.

▪ Still another argument made by appellant is in the form of an attempted disclaimer of his status as principal by saying that in signing the listing agreement and recommending the prospective buyer he was performing acts "not determinative of the capacity in which he was acting." But he signed the listing agreement as "owner" and that made him, for the purpose of this case, the prima facie owner of the property. The evidence is compelling that the relationship of principal and agent was established between him and the broker. The broker's claim to compensation was being made under what was basically an employment contract. Hence the fact (unknown to the broker until later) that there was a co-owner in the picture in no way affected his right to a commission. Mr. Heyward, having described himself as owner and conducted himself as principal in the transaction, could not escape liability by reason of the later-disclosed fact that his daughter had an interest in the property too.

Affirmed.

**2.** Heller & Henretig v. 3620—168th Street, 274 App.Div. 1007, 84 N.Y.S.2d 767; Nurnberg v. Cohen, Sup., 69 N.Y. S.2d 173.