RANSOM & RANDOLPH CO. v. PINCHES.

(Circuit Court of Appeals, Second Circuit. June 15, 1916.)

No. 284.

1. BROKERS &⟶49(3)—COMMISSIONS—RIGHT TO.

Plaintiff was authorized to negotiate with American firms for a general agency to represent in the United States and Canada a German company manufacturing dental supplies. The draft agreement sent by the German firm to plaintiff provided for a five-year agency and fixed the minimum quantity of artificial enamel which should be purchased during those years. Defendant agreed to pay plaintiff the sum of $20,000, should he secure for them an exclusive agency for North America, and, if possible, the West Indies, Central America, and South America. The agreement between plaintiff and defendant provided that plaintiff should not com-

pete in the sale of dental supplies for a period of 10 years, and left the amounts of the purchase to be agreed upon. *Held*, that defendant could not escape payment of the commission, where it appeared that plaintiff would have been able to secure the contract, had defendant not secured it through another agent, on the ground of slight and minute differences between the proposed agreement and the draft agreement, particularly as defendant made no objection to the contract actually procured, which practically followed the terms of the draft agreement.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 72; Dec. Dig. ⊙═⇒ 49(3).]

2. BROKERS ⊙═⇒7—COMMISSIONS—RIGHT TO.

Where defendant agreed to compensate plaintiff upon his securing a satisfactory contract giving defendant the exclusive agency for dental supplies manufactured by a German firm, recovery will not be denied on the ground that the contract between plaintiff and defendant was indefinite, where plaintiff could have secured a satisfactory contract.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 5–8; Dec. Dig. ⊙═⇒7.]

3. BROKERS ⊙═⇒88(4)—COMPENSATION—ACTIONS—JURY QUESTION.

In an action to recover under an agreement whereby defendant was to compensate plaintiff if he should procure for it a satisfactory agency contract to represent a German firm, *held*, that the question whether plaintiff could have secured a satisfactory contract was for the jury.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 128, 129; Dec. Dig. ⊙═⇒88(4).]

4. DAMAGES ⊙═⇒59—MEASURE—BREACH OF CONTRACT.

Possibility of plaintiff's future breach of covenants which were conditions subsequent cannot be measured in damages, so as to reduce plaintiff's recovery in an action for breach of contract.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 108–112, 114, 117, 118; Dec. Dig. ⊙═⇒59.]

5. BROKERS ⊙═⇒87—COMPENSATION—COMMISSIONS.

Where defendant agreed to pay plaintiff a fixed sum if he should procure for it the agency to represent a German firm manufacturing dental supplies, and the agreement provided that if the agency was procured the expense of plaintiff's trip to Europe, advanced by defendant, should be deducted from the compensation, plaintiff, defendant having breached its contract, is not entitled to recover the full amount but the expenses should be deducted.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 131; Dec. Dig. ⊙═⇒ 87.]

6. APPEAL AND ERROR ⊙═⇒274(5)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—SUFFICIENCY.

In such case an exception to the charge that plaintiff was entitled to the full amount, coupled with a request to charge that there was no evidence under which any verdict could be returned for plaintiff, did not present the question whether the expense of such trip should be deducted from plaintiff's recovery, and hence a judgment for the full amount cannot be attacked on error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1631; Dec. Dig. ⊙═⇒274(5); Trial, Cent. Dig. § 691.]

In Error to the District Court of the United States for the Eastern District of New York.

Action by Conrad H. Pinches against the Ransom & Randolph Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

⊙═⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. F. Brown and Graham & L'Amoreaux, all of New York City (George S. Graham, Ralph Polk Buell, and Charles Voetsch, all of New York City, of counsel), for plaintiff in error.

G. B. Covington, Bernard G. Heyn, and Herbert A. Heyn, all of New York City, for defendant in error.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. The plaintiff was engaged in buying and selling dental supplies, and had for some time conducted a selling agency for the United States of an article known as "Ascher's Enamel" and other dental articles manufactured by the General Dental Manufacturing Company of Berlin. That company had also given him the following authority to continue until May 15, 1914, to negotiate with others for the agency in this country:

"We herewith authorize you to negotiate with firms whom you consider competent, regarding our general agency for the United States of America under the inclosed terms and conditions as set forth in the inclosed draft of agreement."

This letter was accompanied by a draft agreement, the material parts of which were as follows:

"(1) The General Dental Manufacturing Company mit beschrankter Haftung of Berlin shall grant to the agent and the agent shall accept the sole and exclusive agency for the sale in the United States of America and Canada of Ascher's Artificial Enamel and other dental articles now handled by the said company. As regards any new inventions the company grants the agent the right to acquire the agency thereof under the same conditions as may be offered to the company by third parties. * * *

"(5) The price payable by the agent for Ascher's Artificial Enamel is the present detail price of the German lists with a deduction of 72% (seventy-two per cent.) rebate. For new inventions the price is to be agreed upon.

"(6) The agent agrees to take delivery of a minimum quantum of Aschers' Artificial Enamel at the net value of Mk. 70,000 (seventy thousand marks) during the first year, at the value of Mk. 85,000 (eighty-five thousand marks) during the second year, and at the value of Mk. 100,000 (one hundred thousand marks) in all subsequent years. Regarding the other articles the quantum to be taken requires a special agreement."

With these documents in hand the plaintiff began a negotiation with the defendant for the agency. The defendant was satisfied to negotiate on the lines of the draft agreement as changed by it and thereupon the following agreement was entered into:

"Toledo, April 9, 1914.

"Mr. C. H. Pinches, at present in Toledo, Ohio: Agreeable to our verbal conference and with reference to the authority vested in you by the General Dental Manufacturing Company of Berlin, we state as follows:

"Upon our acquiring the exclusive agency for Ascher's Enamel and their other products for North America, and, if possible, West Indies, Central America, and South America, according to a mutually satisfactory contract, the furnishing of certified statements showing the volume of business which you have done in previous years in this line, and furnishing such other evidences as may be required, that they and other statements which you have made are in accordance with facts, we hereby agree to accept said agency, paying you therefor the sum of twenty thousand dollars ($20,000.00) as follows:

"Two hundred fifty dollars ($250.00) as evidence of good faith on our part

234 F.—54

at the acceptance of this agreement and the remainder to be paid on demand after the consummation of the closing of the contract with the General Dental Manufacturing Company.

"In the meantime it is understood that you will accompany our Mr. Bigelow to a trip to Germany in the interest of this deal and shall receive therefor a salary of fifty dollars ($50.00) a week, and in addition we will pay your traveling and other expenses; the traveling and other expenses, however, to be deducted from the balance that will be due you should the contract between the General Dental Manufacturing Company and ourselves be entered into along the lines of our conversation and the tentative contract that has been drawn up.

"It is understood, of course, that you will turn over to us all right, title, and interest in every way that you may now have or that you may acquire from the General Dental Manufacturing Company; also that you will not engage in any competing branch of the dental supply business within the territory covered by the contract that shall be made for a period of ten years from this date, and further, that should you acquire in any way any formulas or rights that would compete with this line within the period of ten years they shall automatically come to us.

. "We also accept your suggestion that in the event of desiring your services for a limited period that you will do your utmost to give us temporary help by payment of expenses only.

"Trusting that this is in accordance with your understanding, we are
"Yours very truly,                    The Ransom & Randolph Co.,
                                       "C. S. Bigelow, Pres.
"Your signature at the end of this clause shall constitute this letter a contract.          C. H. Pinches."

Bigelow, the president of the defendant, not being able to go to Berlin, sent Crandell, its secretary and treasurer, to New York with arrangements to sail with the plaintiff on the evening of April 20th. On that day, however, Crandell was advised that one De Sanno had the authority from the German company to dispose of the agency, and after an interview with De Sanno's son and seeing some cables from Germany, he told the plaintiff that it would be a fool's errand to go to Berlin, that he would not do so, and that he was through with the Ascher's Enamel and would have nothing more to do with it. Instead of this he began a negotiation with De Sanno without the plaintiff's knowledge and subsequently went to Berlin with De Sanno's son, where on May 14th, the German company made a contract with De Sanno, to take effect May 16th, under and by virtue of which the defendant became the distributing agents of the German company in the United States and Canada.

[1] The defendant points out some differences between the agreement of April 9th and the draft agreement, which we do not think entitled to serious consideration. The former speaks of the territory to be covered as "North America," whereas the latter mentions only the "United States and Canada." The jury might well have concluded that the parties meant the United States and Canada when they used the words North America. At all events the defendant took no objection to the territory as described in the draft agreement accompanying the authority from the German company or in the agreement which that company subsequently made with De Sanno. It is also said that the agreement of April 9th calls for a term of 10 years, but we think the language as to ten years applies, not to the term of the agency, but to the period during which the plaintiff agrees not to com-

pete. Were this not so, the draft agreement calls for a term of five years and the defendant took no exception to it.

So the differences between the agreement of the German company with De Sanno and the draft agreement approved by the defendant are not very serious. The draft agreement calls for the agency for the United States and Canada for "Ascher's Artificial Enamel and other dental articles now handled by the said company," whereas the other calls for an agency for the same territory for the enamel and providing that the agency for other articles is to be subsequently agreed upon. The draft agreement provides that the price for the enamel to be paid was 66⅔ per cent. off the German company's lists, whereas the second sets forth the prices for the various styles of enamel specifically. The draft agreement calls for a term of five years, the value of enamel to be taken in the first year to be 70,000 marks, in the second 85,000 marks, and for the third, fourth, and fifth years 100,000 marks each, whereas the other calls for the value of 150,000 marks for the first eighteen months and thereafter indefinitely for 100,000 marks a year. In the draft agreement nothing is said about the price to be paid for or quantity to be taken by the agent of other dental articles manufactured by the German company which were evidently to be subsequently agreed upon. The other contract provides that the agency for these articles is to be subsequently agreed upon.

When Crandell on April 20, 1914, refused to have anything further to do with the Ascher matter, he asked the plaintiff to sign a memorandum which he had written on the agreement of April 9th canceling it. The plaintiff refused to do so, and thereupon Crandell charged him with refusing in order to "hang onto" the $250. The plaintiff replied:

"That isn't the idea at all, and if you feel that way about it I will return the $250 to you. You either owe me the whole amount or nothing at all, and I know that you are perfectly good for the $250, and you can have your money; but I won't sign any release, and won't relinquish any of my rights."

Subsequently the plaintiff, without knowledge that the defendant was negotiating through De Sanno with the German company, wrote some letters to the defendant which are supposed to indicate that he regarded the negotiation with the defendant as off and ended. This question whether the agreement of April 9th was canceled with mutual consent was fairly submitted to the jury, and they have found in favor of the plaintiff.

[2, 3] The defendant makes several objections as sustaining its motion for the direction of a verdict in favor of the defendant. It is said that the contract of April 9th was too indefinite and uncertain to be enforced at all. The only uncertainty was whether the German company would give an agency contract along the lines of the draft agreement which would be satisfactory to the defendant. Of course, such an agreement as between the German company and the defendant would have to be certain, but any agreement satisfactory to it which the defendant should obtain through the plaintiff would have made the agreement of April 9th perfectly definite on this point. The defendant did get an agreement which was satisfactory to it through De

Sanno, and it was for the jury to say whether the plaintiff could not have got the same contract, and whether the defendant had not wrongfully prevented him from doing so. The evidence justified the jury in finding that the contract actually made between De Sanno and the German company was made for the benefit of the defendant and was satisfactory to it. May 15th Crandell, then in Berlin, notified the trade in the United States as follows:

"Gentlemen: With unusual satisfaction I wish to announce the successful conclusion of negotiations between my company and the Ascher Laboratories, Berlin, by which the distribution of Ascher's New Artificial Enamel throughout the United States and Canada passes under the control of the house that I represent. * * *"

On the same day the president of the defendant wrote from Toledo to the German company:

"Dear Sirs: We are in receipt of your letter of May 2d, and while at one time we regretted the occurrence to which you refer, we are just in receipt of a cablegram from our Mr. Crandell to the effect that he has made a satisfactory arrangement for the handling of your material, and—'All's well that ends well.' * * *"

While Crandell was working at Berlin to get the contract through De Sanno, the defendant kept the plaintiff in the dark. The president wrote to De Sanno on May 4th a letter which concluded:

"Will do nothing about Mr. Pinches until Mr. Crandell comes back. I had hoped you would advise me what to write him. Would it do at this time for me to tell him the true situation? * * *"

What the plaintiff could have accomplished if the defendant had given him a fair opportunity is of course not susceptible of positive proof. A conclusion is to be drawn from all the facts. We think there was evidence enough to justify the jury in finding that the plaintiff could have obtained exactly the same contract as De Sanno did, or at least a contract that would have been equally satisfactory to the defendant and the German company on the lines of the draft agreement approved by the defendant, which was the substantial thing he was required to do under the contract of April 9th.

Judge Veeder concluded his charge by saying:

"If you find for the plaintiff, the plaintiff is entitled to his bargain, namely, $20,000, together with interest from the time that he was prevented from performance of his contract, which has been computed, subject to correction, at $1,950, making in all the sum of $21,950. If, on the other hand, you find for the defendant, you will simply report that you so find."

[4] The defendant objects that there should have been deducted from the consideration agreed upon in the contract of April 9th the value of various covenants of the plaintiff, viz., that he would not compete in the dental business for ten years and that he would give the defendant temporary help for his expenses only; these covenants were conditions subsequent and the possibility of a future breach thereof could not have been proved nor measured in damages. So the same is true of his covenant to turn over any right, title, or interest which he now has (of which there is no evidence) or may hereafter acquire from

the German company and any formulas or rights he might hereafter acquire which would compete in this line.

[5, 6] Finally, the expenses which were to be incurred on the European trip were not incurred, and the defendant alleges that recovery for the full amount results in an overpayment. This point seems to be a good one, but we do not think it was sufficiently called to the attention of the trial judge. The exception was follows:

"I except to that portion of your honor's charge where you say that the plaintiff is entitled to the full amount, and ask your honor to charge that there is no evidence in this case upon which any verdict could be computed under the pleadings."

We do not think that this request brought to the court's attention the point now raised. The expenses were probably not very substantial, in view of the sum sued for, and it is probable that the parties did not think anything about them at the time. The exception does not seem to us to justify a new trial.

The judgment is affirmed.