**POTOMAC CHEMICAL CO., Inc., v. CHAPMAN.**

No. 8587.

United States Court of Appeals District of Columbia.

Argued Nov. 9, 1944.

Decided Dec. 26, 1944.

Mr. Alvin L. Newmyer, of Washington, D. C., with whom Mr. Stanley H. Fischer, of Washington, D. C., was on the brief, for appellant.

Mr. Arthur J. Hilland, of Washington, D. C., with whom Mr. Samuel Shapiro, of Washington, D. C., was on the brief, for appellee.

Before MILLER, EDGERTON, and ARNOLD, Associate Justices.

EDGERTON, Associate Justice.

This is an action by a broker to recover compensation under a contract by which he agreed to sell the defendant's product on commission. Defendant appeals from a judgment of $4,200 in favor of plaintiff.

The product is a rust preventive called Tectyl. The original contract authorized plaintiff to endeavor to get Tectyl "tested, approved and used" by three specified companies. The contract, in the form of a letter from plaintiff to defendant, further read: "* * * should I be successful in getting any or all of the above to use Tectyl I am to receive, as my remuneration, a commission of ten percent on all orders received from [them]." The contract was extended by an oral agreement to cover any companies with which the defendant had no previous contact. The duration of the contract was not specified, but defendant's president told plaintiff that he could not expect immediate results because it usually took about a year to test the product. Navy specifications required 50 weeks.

The contract was signed on January 11, 1941. During the next six and one-half months the plaintiff solicited some sixty companies and sent samples for testing to most of them. On August 1, 1941, the defendant's president told plaintiff that he should solicit no more business; that he would be given credit for a period of 30 days for the accounts listed in his name; that there was no dissatisfaction with his efforts; and that the notice was given because of a contemplated arrangement with another company for the manufacture and national distribution of Tectyl. Accordingly, plaintiff ceased soliciting. On August 28, 1941, he brought this action. As of September 1, 1941, his commissions amounted to about $20.

At the trial it was proved that up to October 21, 1942, the companies which plaintiff solicited sent in orders amounting to about $42,000. Defendant's president admitted that he himself did not solicit any of these orders, and there was practically no evidence that any third person did so. Defendant contended that the orders came in as a result of Pearl Harbor because defendant was one of three concerns which made a satisfactory product, and that plaintiff's efforts were not a "procuring cause." Defendant's president testified that his real reason for discharging plaintiff was that plaintiff had not brought in enough business. He admitted that no arrangement for national distribution was actually made until a year and a half later. He did not deny telling plaintiff that sales would be slow because of the necessity of lengthy tests, but he testified that tests could in fact be made in two to four weeks.

At plaintiff's request the court instructed the jury that if they found plaintiff to be the procuring cause of any orders they should award him ten per cent. Defendant complains of the court's refusal to direct a verdict in its favor, and also of the court's refusal to give the following instruction: "The jury are instructed that no time limitation is inserted in the contract for the performance of the plaintiff's services and that, therefore, the contract is regarded as terminable by either party on reasonable notice and no cause need be assigned. They are further instructed that the said contract implies that the work for which the plaintiff was employed contemplated that it was to have been done or performed within a reasonable time."

It is true that a brokerage contract of indefinite duration is for a reasonable time only and may be terminated at will on reasonable notice.[1] But the termination must be in good faith. The principal may not terminate the contract for the purpose of depriving the broker of commissions to become due by reason of work already done.[2] We think it plain that defendant terminated plaintiff's contract for this purpose. Though it was made with knowledge that there would be few immediate sales because of the necessity of lengthy tests, it was terminated before those tests could be completed. Though defendant now suggests that it was terminated because plaintiff failed to bring in business and because of a contemplated arrangement with another company, plaintiff was not given time enough to bring in business; he was told that his efforts were satisfactory; and no new arrangement was made for 18 months.

Since it was plain that defendant terminated the contract in order to deprive plaintiff of commissions, the only question for the jury was whether plaintiff was the procuring cause of the orders. This question was presented to the jury by proper instructions and the evidence supports the verdict.

Two original orders, which defendant sought to introduce in order to show that they were due to government contracts, were properly excluded as irrelevant. The question was not why purchasers needed a rust preventive but who caused them to supply their need with Tectyl.

Affirmed.

1 Willcox & Gibbs Sewing Machine Co. v. Ewing, 141 U.S. 627, 635, 12 S.Ct. 94, 35 L.Ed. 882; Sibbald v. Bethlehem Iron Co., 83 N.Y. 378, 38 Am.Rep. 441. Restatement of Agency, § 105; 24 A.L. R. 1537; 28 A.L.R. 893.

2 Crowe v. Trickey, 204 U.S. 228, 239, 27 S.Ct. 275, 51 L.Ed. 454; Sibbald v. Bethlehem Iron Co., supra, note 1. "An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished, the agent's prior efforts being the effective cause thereof." Restatement of Agency, § 454.