## MOORE v. BURKE et al.
### No. 325.

Municipal Court of Appeals for the District of Columbia.

Jan. 8, 1946.

Philip W. Thomas, of Washington, D. C. (Thomas W. Parks, of Washington, D. C., on the brief), for appellant.

James J. Laughlin, of Washington, D. C., for appellees.

Before CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

Suit was brought by Moore, a real estate broker, claiming a commission due him as a result of procuring a buyer for defendants' real estate. The court gave judgment for the defendants and plaintiff appeals.

On August 29, 1944, the defendants listed the property for sale with the plaintiff for a period of twenty-five days. He located Isaac R. Jefferson, a prospective buyer for the property, and on August 31st his principals entered into a contract of sale with Jefferson. Under the terms of the contract, the parties agreed that Jefferson would buy the property for $10 000, $1,000 to be paid in cash at the time of conveyance and a first deed of trust "for as much as possible" placed with a building and loan association. The sellers agreed to take a second deed of trust for the balance of the deferred purchase money. The parties modified this agreement on October 2d, by providing that a first deed of trust for $5,500 from the American Building Association would be accepted. Plaintiff agreed to this modification and apparently undertook to arrange the financing.

On October 13th the Building Association notified plaintiff the credit standing of Jefferson did not warrant making the loan. Plaintiff testified that he immediately notified the sellers of this fact, telling them at the same time that the association was rechecking the application at plaintiff's request because he believed a mistake had been made, since Jefferson had considerable property in the District of Columbia.

On October 14th the plaintiff met with the parties to discuss the status of the loan. The purchaser requested defendants to accept a first deed of trust for $5,000, which they refused to do. It was testified by defendants that Jefferson then stated, "I must have your answer tonight so that I can go home and sleep," whereupon one of the defendants replied, "You have my answer," and the plaintiff said, "I am left holding the bag." The plaintiff and purchaser denied having made the statements attributed to them.

The Building Association verbally advised the plaintiff on October 16th or 17th that a $5,500 loan had been approved. When he notified the defendants of this fact, they advised him that the sale was off and the property had been rented. Plaintiff made arrangements with a Title Company for settlement of the case on October 27th, the earliest date available, and notified the defendants but they refused to perform, did not attend the conference at the Title Company, and tendered back the deposit paid by Jefferson under the contract of sale.

Attacking the finding and judgment of the trial court, plaintiff asserts that

the evidence does not support a finding of mutual rescission of the contract and that he is entitled to his commission as a matter of law in that he produced a purchaser ready, willing, and able to perform.

As we view the case, its vital feature is the conference between all the parties on the evening of October 14th. The sellers were then informed that the buyer could not obtain the first trust loan required by the contract. The buyer's request that the sellers agree to a reduced first trust was refused. What then occurred is disputed. The sellers claimed that the parties then mutually rescinded the contract and called the deal off. The parties did not use express words indicating a rescission, but from their language it could be inferred that such was their intention. Inferences are to be drawn by the trial court and from its general finding we must assume that it found a mutual rescission between the buyer and sellers on October 14th. Furthermore, the statement of the broker, who was present at the discussion, that he was left holding the bag indicated that he realized the negotiations had come to an unsuccessful end and his opportunity to earn a commission had passed.

■ Of course, if at the time of rescission, the broker had already produced a purchaser ready to close and able to perform the contract, the sellers and buyer could not by rescinding the contract defeat the broker's right to a commission. Dotson v. Milliken, 27 App.D.C. 500, affirmed 209 U.S. 237, 28 S.Ct. 489, 52 L.Ed. 768. But it is conceded that on October 14th the buyer was not able to get the loan from the Building Association required by the contract. The broker at that time had not produced a buyer ready and able to meet the sellers' terms, and had not earned a commission. We think the rescission amounted to a revocation of the broker's authority. When the owners withdrew the property, the agent's authority was terminated and subsequent occurrences would not entitle the agent to the commission.

■ In the absence of special contract, a broker's authority may be revoked at anytime before his efforts meet with success, without rendering the principal liable for commissions, provided the revocation is in good faith. Elliott v. Kazajian, 255 Mass. 459, 152 N.E. 351; Howard v. Street, 125 Md. 289, 93 A. 923; McCallum v. Grier, 86 S.C. 162, 68 S.E. 466, 138 Am. St.Rep.1037; Auerbach v. Internationale W. Lampen A. Gesellschaft, C.C.S.D.N.Y., 177 F. 458.[1] Here the owners' right to withdraw the property cannot be assailed. They had listed the property for sale on August 29th for a period of twenty-five days. The meeting in question occurred on October 14th and the broker had not then produced a purchaser who was ready, willing, and able to meet the terms specified. While the withdrawal may appear harsh when viewed in the light of subsequent events, the owners' power to thus revoke the agent's authority is clear.[2] The rule is aptly stated by Finch, J., in Sibbald v. Bethlehem Iron Co., 83 N.Y. 378, 383, 38 Am.Rep. 441:

"It follows, as a necessary deduction from the established rule, that a broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions."

If the defendants had withdrawn the property and later sold it to the same person themselves without the aid of the plaintiff, a question as to their good faith could well arise. Here no contention is made that they acted other than in good faith. The defendants terminated the negotiations before a purchaser was produced who could meet the terms of the contract. This they had a right to do.

Affirmed.

---

[1] Cf. Potomac Chemical Co. v. Chapman, 79 U.S.App.D.C. 299, 146 F.2d 664, certiorari denied 324 U.S. 881, 65 S.Ct. 1028, involving a brokerage contract and not a mere listing for sale.

[2] The authority given the broker was an "exclusive right for 25 days," but expressed no consideration for the right. Since the 25 days had long expired prior to October 14th, it is not necessary for us to decide the right of the principal to revoke the agent's authority within the 25-day period.