**Robert S. HAMADY, Plaintiff,**

v.

**TRAMMELL CROW ASSET COMPANY, Defendant.**

Civ. A. No. 92–1625–A.

United States District Court, E.D. Virginia, Alexandria Division.

May 24, 1993.

Geoffrey Judd Vitt, Brooks, McNally, Whittington Platto & Vitt, Norwich, VT, for plaintiff.

John Thorpe Lawrence Richards, Jr., Dunnells, Duvall & Porter, Washington, DC, for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the court on defendant Trammell Crow Asset Company's motion for summary judgment. Plaintiff Robert Mr. Hamady is a real estate broker for First National Real Estate Corporation. In the summer of 1991, Mr. Hamady heard a rumor from a friend who worked at the District of Columbia Ramada Inn that the government of Saudi Arabia was in search of office space to expand its embassy in Washington, D.C. With this information and nothing more, Mr. Hamady set out to find the Kingdom of Saudi Arabia new office space and began examining office buildings in Washington, D.C. by driving by buildings in his car and walking into lobbies.

Mr. Hamady never let anyone at the Saudi Arabian embassy know that he was searching for office space on the Kingdom's behalf. All plaintiff did was stop by the embassy and confirm in a one-minute conversation with a "busy man" that the embassy was seeking to buy a building. This unidentified man referred Mr. Hamady to the U.S. Army Corps of Engineers' Real Estate Division which handles real estate transactions for foreign governments and their embassies in the United States.

Mr. Hamady cold-called Christopher Roth, a partner of Crow–Washington Square 1192 Limited Partnership, the owner of a building at 1001 30th Street, N.W. in Washington, D.C., and said that he had a "user who would like to buy the building." Mr. Hamady and Mr. Roth met again on September 25, 1991 at which time Mr. Hamady presented Mr. Roth with a "Memorandum of Understanding" which purported to "register" two customers for the purchase of the property, the Government of Egypt and the Kingdom of Saudi Arabia. Mr. Hamady told Mr. Roth that both governments were willing to pay a purchase price in the $20 million range. Mr. Hamady had neither the consent of his alleged customers to act on their behalf nor any authority to register them as "customers" in any transaction. Mr. Hamady had no relationship with anyone acting on behalf of either the Government of Egypt or the Kingdom of Saudi Arabia at any time during the transaction. Based on Mr. Hamady's representations that he was the exclusive agent of the two governments, Mr. Roth signed the memorandum.

Mr. Hamady has sued defendant for breach of contract for not paying a 10% commission allegedly due under the "Memorandum of Understanding" for the sale of the building to the Kingdom of Saudi Arabia on September 10, 1992 for $14,250,000.00. The broker in the sale was Spaulding & Slye Colliers, which had been retained by the Army Corps of Engineers in July 1991 to locate an appropriate site for the Saudis.

The first offer for the building by the Saudis was presented to defendant by the U.S. Army Corps of Engineers on March 30, 1992. In September 1991, when Mr. Hamady told Mr. Roth that he was the Saudi Arabian Kingdom's exclusive agent, Spaulding & Slye Colliers actually was that agent. Mr. Hamady had nothing to do with the sale.

Grants of summary judgment motions are warranted if the pleadings, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party will prevail as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The District of Columbia Real Estate Licensure Act of 1982 was enacted "to protect the public against incompetence, fraud, and deception in real estate transactions." 30 D.C.Reg. 390 (1983). The Act modified and strengthened the proscriptions mandating written listing agreements between brokers and their principals.

The new statute is explicit that "[a] written listing contract is required in the District for the sale of all real property." D.C.Code Ann. § 45–1945. The "written listing contract" mandated is not simply a requirement that there be a writing signed by the parties before an action can be maintained. To the contrary, the D.C. code states that a "written listing contract" must contain (1) the price and terms that the owner agrees to accept, D.C.Code Ann. § 45–1922(14); (2) the broker's promise to make a reasonable effort to obtain a purchaser, *Id.*; and (3) "a definite termination date which is not subject to prior notice from either party." D.C.Code Ann. § 45–1936(b)(16).

■ The "Memorandum of Understanding" which Mr. Hamady drafted lacks a specific price term. The only reference to price in the memorandum is the phrase, "a commission of ten (10%) percent." Nowhere is there any indication as to what price the ten percent was intended to be calculated from. The D.C. brokerage statute was enacted to prevent this sort of ambiguity.

Mr. Hamady contends that the "Memorandum of Understanding" did not require him to do anything to earn his ten percent commission. The statute, however, plainly requires reasonable measures to obtain a purchaser. D.C.Code Ann. § 45–1922(14). In the District of Columbia, brokers are required to perform services to earn their commission and that promise to perform cannot be illusory.

The "Memorandum of Understanding" does not contain "a definite termination date which is not subject to prior notice from either party" as required by D.C.Code Ann. § 45–1936(b)(16). Mr. Hamady's failure to provide for the mandated termination provision in the "Memorandum of Understanding" renders it void and unenforceable. "In the District of Columbia, it is a principle of long standing that 'an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer.'" *Capital Constr. Co. v. Plaza West Cooperative Ass'n,* 604 A.2d 428, 429 (D.C.1992). Section 45–1936(b)(16) was plainly enacted for "police or regulatory purposes," D.C.Code Ann. § 45–1921, 1946(a), and the "Memorandum of Understanding" does not contain the mandated provision.

■ By failing to satisfy these three requirements, the "Memorandum of Understanding" fails to comply with the District of Columbia's brokerage requirements for the listing of real estate. Assuming arguendo that the "Memorandum of Understanding" were a legitimate listing contract, Mr. Hamady's claim would still fail as a matter of law because any relationship he had with the defendant was terminated by Mr. Roth on February 26, 1992 when Mr. Roth informed Mr. Hamady by telephone that "no one is authorized to make an offer on the property to your organization." Absent the "definite termination date" required by the D.C.Code Ann. § 45–1936(b)(16), the common law provided that when a brokerage contract was silent on termination, the contract was terminable at will by the property owner. *See Moore v. Burke,* 45 A.2d 285, 286 (D.C.Mun. Ct.App.1946); *Potomac Chemical Co. v. Chapman,* 146 F.2d 664, 665 (D.C.Cir.1944), *cert. denied,* 324 U.S. 881, 65 S.Ct. 1028, 89 L.Ed. 1432 (1945).

Moreover, in contrast to Mr. Hamady's claim that once the "Memorandum of Understanding" was signed he did not have to do anything to receive a commission, "[i]t is well settled that a broker cannot receive a commission under an ordinary brokerage agreement unless he was the procuring cause of the sale." *Sam Blanken & Co. v. Tinos, Inc.,* 219 A.2d 499, 500 (D.C.1966). It is undisputed that it was Spaulding & Slye Colliers—and not Mr. Hamady—that directly and proximately caused the building's sale.

Mr. Hamady's claim is also barred by his failure to deal with defendant in the good faith mandated by law. A broker who fails to exercise the highest fidelity towards his principal is barred from recovering a commission. *Vicki Bagley Realty, Inc. v. Laufer,* 482 A.2d 359 (D.C.1984). Because of Mr. Hamady's deliberate misstatements to Mr. Roth about his non-existent relationships with the Kingdom of Saudi Arabia and the Government of Egypt he is barred by law from recovering any commission.

For the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED.