28 F.3d 1209
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert S. HAMADY, Plaintiff-Appellant,
v.
TRAMMELL CROW ASSET COMPANY, a/k/a Trammell Crow Company,
Defendant-Appellee.
 No. 93-1796.
 United States Court of Appeals, Fourth Circuit.
 Argued March 10, 1994.
Decided June 21, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-92-1625-A)
 ARGUED: Geoffrey Judd Vitt, Brooks, McNally, Whittington, Platto & Vitt, Norwich, Vermont, for appellant.
 Stuart Scott Morrison, Holland & Knight, Washington, DC, for appellee.
 ON BRIEF: Michael A. Schlanger, Kirk R. Ruthenberg, Amy L. Bess, Sonnenschein, Nath & Rosenthal, Washington, DC, for appellant.
 John Thorpe Richards, Jr., Dunnells & Duvall, Washington, DC, for appellee.
 E.D.Va.
 AFFIRMED.
 Before RUSSELL and MICHAEL, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 In this diversity action, Appellant Robert S. Hamady, a real estate broker, sued Appellee Trammell Crow Asset Company (Trammell Crow) for breach of a real estate commission agreement. Hamady appeals the district court's order granting summary judgment to Trammell Crow, and we affirm.
 
 
 2
 In early summer 1991, John Wahab, who worked for the same real estate company as Hamady, got third-hand information that the Kingdom of Saudi Arabia was interested in buying a building in the District of Columbia for use by the Saudi Ministry of Defense. Wahab got this information from a friend, Mr. El Nagdy, who, in turn, had learned it from an employee in the Military Attache's office in the Saudi Embassy. Because Wahab was not licensed in the District of Columbia, he contacted Hamady (who was) and asked Hamady to help locate a property that might be suitable for the Saudis.
 
 
 3
 Without any contact whatsoever with anyone affiliated with the Kingdom of Saudi Arabia, Hamady took it upon himself to begin looking for a building in Washington for the Saudis. He settled upon 1001 30th Street (the 30th Street building), which was owned by a Trammell Crow partnership. Hamady "cold called" Christopher Roth of Trammell Crow, and the two met on September 25, 1991. At the meeting, Roth signed the following memorandum agreement, which Hamady had drafted and signed earlier:
 
 MEMORANDUM OF UNDERSTANDING
 TO: Mr. Chris Roth, Partner
 Trammell Crow Company
 
 4
 1001 30th Street,
 
 N.W. Washington, D.C. 20007
 FROM: Robert S. Hamady, Broker
 
 5
 c/o First National Real Estate Corporation
 
 3918-B South George Mason Drive
 Falls Church, Virginia 22041
 DATED: September 19, 1991
 
 6
 RE: Registration of customer(s) and commission agreement for the property known as 1001 30th Street, N.W., Washington, D.C. 20007
 
 
 7
 This is to register the following customer(s) to whom we are presenting the above referred property as potential customers:
 
 
 8
 1. The Government of Egypt, their representatives and/or their affiliated offices and organizations.[1]
 
 
 9
 2. The Government of the Kingdom of Saudi Arabia, their representatives and/or their affiliated offices and organizations.
 
 
 10
 This is also to confirm our agreement that in the event one of the above purchases the above referred to property, Trammell Crow Company as the Seller will pay to Robert S. Hamady as Broker a commission of ten (10%) percent due and payable at time of settlement.
 
 
 11
 J.A. 659. Hamady and Roth both testified that the memorandum agreement was not intended to be a listing contract, let alone an exclusive listing.
 
 
 12
 When the memorandum agreement was signed, neither Hamady nor Wahab had discussed the 30th Street building or Hamady's "registration" of the Kingdom of Saudi Arabia with any Saudi representative. Indeed, the only two-way contact that Hamady, Wahab, or their employer, First National Real Estate Corporation, ever had with the Saudis about this matter was Wahab's one-minute telephone call with an unidentified staff person at the Saudi Embassy. The staffer told Wahab that the U.S. Army Corps of Engineers (the Corps) was handling the property search for the Saudis and that any inquiries should be made to the Corps.
 
 
 13
 Wahab reported his conversation with the embassy staffer to Hamady, who immediately (on September 26, 1991) sent the Corps a description of the 30th Street building. The Corps, however, had previously asked Spaulding & Slye Colliers (S & S), a real estate firm in Baltimore, to research suitable properties. In July 1991, S & S had sent the Corps a list of 40 possible properties, one of which was the 30th Street building. In October 1991, S & S was formally hired by the Corps to act as a consultant. By early January 1992, S & S had narrowed the list to six properties, including the 30th Street building. On January 31, 1992, Trammell Crow (via Roth) entered into an agreement with S & S, whereby Trammell Crow agreed to pay S & S a commission if the Saudis bought the 30th Street building. Trammell Crow paid S & S the commission when the deal closed.
 
 
 14
 Hamady sued Trammell Crow to collect a brokerage commission under their memorandum agreement dated September 19, 1991. The district court granted summary judgment to Trammell Crow on the ground, among others, that Hamady was not the "procuring cause" of the sale of the building. Our review of the district court's grant of summary judgment is de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 15
 The record reveals that Hamady did not do anything to bring to effect the purchase by the Saudis. Neither the Saudis nor the Corps would deal with Hamady. It was S & S who showed the Saudis the property, helped the Saudis develop their initial purchase offer in March 1992, and helped conduct the protracted negotiations before the sale finally closed in August 1992.
 
 
 16
 It is undisputed that Hamady was not the exclusive broker for the 30th Street building, and it is well settled that a non-exclusive broker cannot receive a commission unless he was the procuring cause of the sale. See Sam Blanken & Co. v. Tinos, Inc., 219 A.2d 499, 500 (D.C.1966). We therefore affirm on the district court's dispositive conclusion that Hamady was not the procuring cause of the sale. Hamady v. Trammell Crow Asset Co., 824 F.Supp. 580, 583 (E.D.Va.1993).[2]
 
 
 17
 The judgment of the district court is affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The Government of Egypt was never involved in any way. Wahab testified that he suggested that Hamady also "register" Egypt to hide from Roth the identity of the real prospect, the Saudi Government
 
 
 [2]
 Our affirmance on this ground makes it unnecessary for us to reach the other issues raised by Hamady