**CASSIDY & PINKARD, INC., Plaintiff,**

v.

**Douglas JEMAL, et al., Defendants.**

**Civ. A. No. 93–2668 (JR).**

United States District Court,
District of Columbia.

Aug. 31, 1995.

**6**

Robert Wilson Hawkins, Kimberly A. Newman, Hunton & Williams, Washington, D.C., for plaintiff.

Robert F. Leibner, Leibner & Potkin, Washington, D.C., for defendants.

## MEMORANDUM

ROBERTSON, District Judge.

This is an action by a real estate brokerage firm to recover a commission in connection with the sale of Wonder Plaza, a property located at 2301 Georgia Avenue, N.W., Washington, D.C., to Howard University on August 30, 1993. Plaintiff advances four theories of recovery: breach of contract, quantum meruit, fraudulent misrepresentation, and promissory estoppel. Now before the Court is defendants' motion for partial summary judgment as to the second and third of those claims, for quantum meruit and fraudulent misrepresentation.

The following facts are undisputed: Defendant Douglas Jemal, individually and as general partner of defendant Lawrence D. Limited Partnership, purchased Wonder Plaza in March 1990. On October 9, 1990, defendants entered into an "exclusive agency agreement" with plaintiff Cassidy & Pinkard, Inc. ("C & P"), a real estate brokerage firm. The agreement provided in relevant part (1) that C & P would serve as the exclusive leasing agent for the office building portion of Wonder Plaza from October 1, 1990, until June 1, 1991, after which time the agreement would be continued on a month to month basis; (2) that C & P would receive a commission of from two to three percent on the lease or sale of all or part of the building, depending upon details of the transaction; (3) that either party had the right to cancel the agreement for cause upon 30 days advance written notice; (4) that, upon receipt of a notice of intent to cancel, C & P would have 14 days to name potential tenants with whom it had carried on active negotiations within the preceding 60 days; and (5) that, in order for a commission to be due to C & P, a lease must be executed by one of the named parties within 180 days of the termination date.

The exclusive agency agreement continued past its expiration date and lasted a little more than a year, during which time C & P made unsuccessful efforts to lease Wonder Plaza to Howard University and other prospective tenants. Defendants gave written notice of their intent to cancel the exclusive agency agreement on October 21, 1991. On November 8, 1991, C & P acknowledged receipt of the notice and provided its list of the potential tenants, including Howard, with whom it had carried on active negotiations. No part of the office portion of Wonder Plaza was leased or sold to any entity from October 9, 1990, the date on which the parties executed the exclusive agency agreement, through the termination of the agreement on November 20, 1991; nor was any space leased or sold during the 180–day "tail period" ending May 18, 1992.

The parties executed no other written document concerning brokerage services for Wonder Plaza. Plaintiff nevertheless continued its efforts to lease space at Wonder Plaza and periodically advised defendant Jemal of its activities. In May 1993, Howard University officials expressed interest in purchasing Wonder Plaza. Through separate channels, both defendants and C & P worked to persuade Howard University to make the purchase. In a June 1, 1993, telephone conversation between defendant Jemal and two members of the C & P firm, Mr. Jemal encouraged C & P to continue its efforts to sell Wonder Plaza to Howard University and agreed to pay the commission specified in the exclusive agency agreement. Immediately following that conversation, defendants provided C & P with Wonder Plaza's retail rental rolls. C & P used the rental rolls to prepare an "Explanation of Value," which it then transmitted to defendant Jemal and to the firm Howard University had engaged to calculate the value of the Wonder Plaza property.

On August 3, 1993, defendant Jemal executed a contract to sell Wonder Plaza to Howard University. He did not inform C & P that he had done so. C & P continued its ongoing effort to lease Wonder Plaza to the Howard University-affiliated Computational Science and Engineering Research Center ("ComSERC"), keeping defendant Jemal informed of its activities. On August 23, 1993—nearly three weeks after contracting to sell Wonder Plaza—defendant Jemal told a member of C & P that Wonder Plaza remained unsold and urged C & P to continue its efforts to lease the property to ComSERC.

When plaintiff subsequently learned of the sale of Wonder Plaza to Howard University it made demand upon defendants for a commission. Defendants refused to pay a commission, whereupon, on December 30, 1993, plaintiff filed this suit.

### Claim for Quantum Meruit

Defendants argue that its contract with plaintiff had long expired when the Wonder Plaza sale took place and that the absence of a written listing contract is fatal to plaintiff's claim for a commission. Oral listing contracts were enforceable as a matter of D.C. common law prior to the enactment of § 45–1945. *Regional Redevelopment Corp. v. Hoke*, 547 A.2d 1006, 1011 n. 5 (D.C.1988); *see Apostolides v. Colecchia*, 221 A.2d 437, 438 (D.C.1966). Defendants urge, however, that the District of Columbia Real Estate Licensure Act of 1982, D.C.Code § 45–1945, has changed the common law rule. Section 45–1945 provides: "A written listing contract is required in the District for the sale of all real property." That language is, of course, silent as to commissions. It does not provide, for example, that "no commission shall be payable on a contract for the sale of real estate in the absence of a written listing contract." Nor does § 45–1945 expressly bar an action for a commission in the absence of a written listing contract. *Compare* D.C.Code §§ 45–1926(c) *and* 28–3502; *See RDP Dev. Corp. v. Schwartz*, 657 A.2d 301 (D.C.1995).

The legislative history of § 45–1945 does not reflect an intent to change the common law relating to the payment of real estate commissions. The committee report accompanying the Real Estate Licensure Act indicates that "the bill expands the list of improper activities engaged in by real estate professionals which would be unlawful under the law and *provides sanctions for violations*

*of those provisions . . . ."* Committee on Public Services and Consumer Affairs, Committee Report on Bill 4–230, the "District of Columbia Real Estate Licensure Act of 1981," at 2 (1982) (emphasis added). The act authorizes criminal penalties of fines or imprisonment in addition to any existing civil and criminal penalties. D.C.Code § 45–1946.

■ "No statute is to be construed as altering the common law, farther than its words express." *Dell v. Dept. of Employment Services,* 499 A.2d 102, 107 (D.C.1985); *see Monroe v. Foreman,* 540 A.2d 736, 739 (D.C.1987). Notwithstanding the decision of a district court in Virginia to the contrary, *see Hamady v. Trammell Crow Asset Co.,* 824 F.Supp. 580, 582 (E.D.Va.1993), *aff'd without op,* 28 F.3d 1209 (4th Cir.1994), I cannot find in § 45–1945 an absolute bar to enforcement of an oral contract—if there was an oral contract—to pay a real estate commission.

Defendants go on to argue that the oral listing contract upon which plaintiff bases its implied or quasi contractual claim is illegal and therefore void *ab initio.* The argument proceeds from the well-established proposition that contracts violating professional licensing statutes and usury laws are void and confer no right upon the wrongdoer. *E.g. Capital Constr. Co. v. Plaza West Coop. Assoc., Inc.,* 604 A.2d 428, 429 (D.C.1992); *Nixon v. Hansford,* 584 A.2d 597 (D.C.1991); *Karr v. C. Dudley Brown & Assoc., Inc.,* 567 A.2d 1306, 1308 (D.C.1989); *Truitt v. Miller,* 407 A.2d 1073, 1079 (D.C.1979). The legal issues presented by this argument, however, are not sharply focused enough for pretrial disposition.

■ It is unclear from the pleadings whether plaintiff actually purports to sue upon an oral listing contract, for example. The *quantum meruit* cause to which the defendants' motion and argument are specifically addressed does not require the existence of an oral contract. For *quantum meruit* recovery under a contract implied in fact, plaintiff must show (1) that it performed valuable services for defendants (2) which services defendants accepted, used, and enjoyed and (3) under such circumstances as reasonably notified defendants that plaintiff

expected to be paid. *Vereen v. Clayborne,* 623 A.2d 1190, 1193 (D.C.1993). For plaintiff to recover on a theory of *quantum meruit* based on a contract implied in law or quasi-contract, it must show that defendant was unjustly enriched at plaintiff's expense and that the circumstances were such that in good conscience defendants should make restitution. *Id.* There is a suggestion in the brief of defendants, fuzzy at best, to the general effect that one who violates a statute may not come into equity, but it is unclear that plaintiff violated the statute or that its claim is equitable in nature.

■ Important facts about the relationship between plaintiff and defendant and about the sale to Howard University are disputed and need to be resolved by trial. Particularly where, as here, the motion of defendants is only partially dispositive and leaves unchallenged the plaintiff's breach of contract and promissory estoppel claims, granting the partial motion for summary judgment would not significantly narrow the issues for trial.

*Claim of Fraudulent Misrepresentation*

■ Defendants' dispositive motion as to Count 3 of the complaint, for fraudulent misrepresentation, is miscast as a motion for summary judgment. As defendants properly point out, the elements of fraudulent misrepresentation in the District of Columbia are (1) a false representation, (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive and (5) action taken in justifiable reliance thereon. *Blake Constr. Co. v. C.J. Coakley Co.,* 431 A.2d 569, 577 (D.C.1981); *Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986, 988 (D.C. 1980). The attempt to dispose of this fact-intensive count by arguing that plaintiff has failed to adduce "clear and convincing evidence" cannot succeed. The record supports plaintiff's allegations that defendant encouraged plaintiff to continue looking for buyers and lessors, that it concealed or misrepresented the facts surrounding its imminent sale contract with Howard in December 1993, and that it ultimately refused to pay a commission. A jury, drawing all reasonable inferences in favor of the nonmovant, could find

on the basis of those facts that plaintiff proved fraudulent misrepresentation by clear and convincing evidence. *See Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

A more appropriate defense motion would be for failure to state a claim upon which relief can be granted under Federal Rule 12(b)(6), or for judgment on the pleadings under Federal Rule 12(c), because all that plaintiff has alleged is that defendants misrepresented their *intent* to pay a commission. Such a misrepresentation is nearly impossible to prove false as a matter of fact, and defendants correctly argue that "mere failure of promised performance has never permitted a factual finding that *defendants* never intended to perform," *Soper v. Simmons Intern., Ltd.*, 632 F.Supp. 244, 249 (S.D.N.Y.1986); and that "breach of future promises lies in the realm of the contract," *One-O-One Enter., Inc. v. Caruso*, 668 F.Supp. 693 (D.D.C.1987).

A motion under Rule 12(b)(6) or 12(c)—or for that matter under Federal Rule 9(b)—is not invited by this memorandum, however: the "remedy" under those rules is almost always dismissal with leave to amend. If plaintiff is able to state a proper fraud claim on the facts of this case, an appropriate amendment should be offered now. If no such amendment is forthcoming, the fraud count can be disposed of by oral motion at the time of the pretrial conference.

An appropriate order accompanies this memorandum.

### ORDER

For reasons stated in the memorandum issued this date, the motion of defendant for summary judgment as to Counts 2 and 3 [# 32] is **denied.** A pretrial conference is set for October 16, 1995 at 9:30 a.m., and trial of this cause is set for October 23, 1995 at 10:30 a.m.

So ordered.