**Peter ROTHBERG, Appellant**

v.

**XEROX CORPORATION, Appellee**

No. 16-7024
September Term, 2017

United States Court of Appeals,
District of Columbia Circuit.

Filed on: October 20, 2017

Richard Talbot Seymour, Law Office of Richard T. Seymour, PLLC, Washington, DC, for Plaintiff-Appellant

Peter Rothberg, Pro Se

Robert R. Niccolini, Esquire, Attorney, Zachary Stevens Stinson, Attorney, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Washington, DC, for Defendant-Appellee

Before: Rogers and Griffith, Circuit Judges, and Ginsburg, Senior Circuit Judge.

## JUDGMENT

This appeal was considered on the record from the United States District Court for the District of Columbia and the briefs filed by the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has accorded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the judgment of the district court be affirmed.

## I.

In January 2008, Peter Rothberg started working at Xerox as a "Service and Solutions Executive." This was his first full-time job after graduating from college in 2007. After over a year "on the bench" without an assigned territory, Rothberg was assigned responsibility for sales to federal government entities.

As part of this assignment, Rothberg met with representatives of the DeWitt Army Hospital at Ft. Belvoir Military Base in Alexandria, Virginia. The hospital was a Xerox client but was experiencing billing problems with its existing Xerox copiers. The hospital's billing problems were eventually resolved and the parties disagree over Rothberg's role in fixing the problem: Rothberg claimed that he played an important role, while Xerox claimed that another, experienced employee, Cheryl Land, was more active in meeting with the hospital to address the problem. It is undisputed that the hospital then placed a new order with Xerox, that Rothberg was involved to some degree in the sales proposal, that a "trial" agreement between the hospital and Xerox was signed on August 10, 2011, but no services were provided nor Xerox equipment installed until after this date.

Rothberg was terminated on August 3, 2011, after a history of recurring performance problems. Specifically, Rothberg was "consistently tardy" for meetings, came across as "overly aggressive and unprofessional", and repeatedly failed to meet his sales targets. After being given a formal warning in November 2010, Rothberg nonetheless failed to demonstrate improvement. In this lawsuit, he does not dispute the performance problems that led to his termination, but instead contends that he is entitled to compensation for the DeWitt Hospital sale. At his termination meeting, when Rothberg asked whether he would

receive a commission from the sale, Xerox's regional vice president told him he was not entitled to any commission under Xerox compensation policies.

The Xerox Sales Compensation Manual describes the company's compensation policies. Chapter 11, titled "Compensation Policies," states at the outset that the "[p]olicies are subject to change at the discretion of management and should not be considered a binding contract." Manual "Overview". Chapter 11 also states that "all Sales Compensation Policies exist solely to provide a generalized view as to how sales transactions will typically be compensated and the policy should by no means be considered a promise or contractual obligation to compensate specific transactions or activities in any particular manner." Manual "Purpose". With respect to the installation date for Xerox equipment, another part of the Manual, titled CP-102A, states that "[n]o compensation will be paid prior to install recognition" and "proof of installation for all equipment/software included in the order must be received before internal billing can be triggered." Xerox interprets this document to mean that an employee must be active (i.e., not terminated) at the time of installation. Mem. Op. 17 (citing plaintiff's Ex. 57-2, Dep. of Lohdahl, Xerox Field Comm'n Specialist). Chapter 8 of the Manual states that "a full bonus payment" will only be paid to a terminated employee if "full year performance is 100%." Other documents proffered by Rothberg regarding "special promotions" state that sales representatives are only eligible for promotions if the representatives are "in an eligible incented position at the time of install" and "in good standing with the corporation at the time the bonuses [are] paid." Mem. Op. 18 (referencing plaintiff's Ex. 57-1).

In his complaint, Rothberg seeks the $300,000 he claims he "would have been entitled to under Xerox compensation policies," alleging (1) breach of contract, (2) violation of the D.C. Wage Payment and Collection Law, (3) breach of the covenant of good faith and fair dealing, (4) unjust enrichment, (5) *quantum meruit*, and (6) promissory estoppel. After nearly one year of discovery, Xerox moved for summary judgment, which the district court granted. The court rejected Rothberg's first two claims upon finding provisions in the Compensation Manual disclaimed the formation of a contract, and Rothberg failed to identify any company communications "rationally at odds" with Xerox's written disclaimers. Mem. Op. 25 (quoting and citing decisions of the D.C. Court of Appeals). The court therefore also rejected his claim under the D.C. Wage Payment and Collection Law because he was not "owed" a commission by Xerox, as the equipment was installed after his termination and bonuses were subject to managerial discretion. Finally, the court rejected his last three claims because Rothberg failed to show that he had a reasonable expectation of a commission or that Xerox unjustly denied him a commission.

## II.

On appeal, Rothberg's four challenges to the grant of summary judgment lack merit, notwithstanding that as the non-moving party he is entitled to all reasonable inferences from the evidence. *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 761 (D.C. Cir. 2002) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); FED. R. CIV. P. 56(c).

**A.** Rothberg's principle contention is that Xerox created reasonable expectations of compensation that gave rise to an enforceable contract. Appellant's Br. 37-39. An express disclaimer is not always suffi-

cient to prevent contract formation, as company conduct that is. "rationally at odds" with the disclaimer could give rise to a contract. *Strass v. Kaiser Found. Health Plan of Mid-Atlantic*, 744 A.2d 1000, 1013 (D.C. 2000). Rothberg maintains that Xerox "treat[ed] the [Compensation] Manual as a contract when it wanted to enforce its expectations, while disclaiming it when an employee wanted to enforce his or her expectations." Appellant's Br. 39. Even if the disclaimers are set aside, however, Rothberg was not entitled to a commission for the DeWitt Hospital sale under Xerox's policies because the equipment was only installed after his termination and he does not challenge that his persistent performance problems were the stated reason for his termination. In other words, assuming *arguendo* that Xerox did create a contract, Rothberg is not entitled to a commission under the contractual terms he alleges because he was not an employee at the time of installation.

**B.** Rothberg contends that the "suspicious timing" of his termination violated the covenant of good faith and fair dealing. Appellant's Br. 40-41. The covenant of good faith and fair dealing does not apply because Rothberg failed to show a breach of any contractual obligation. "[D]efendants [do] not breach the covenant of good faith and fair dealing by failing to do something they [have] no obligation to do." *Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014). Under the terms of CP-102A, Xerox was not contractually obligated to pay Rothberg a commission for a sale that was finalized after his termination. Moreover, "[t]o state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Abdelrhman v. Ackerman*, 76 A.3d 883, 891-92 (D.C. 2013) (internal quotations omitted). Although Rothberg points to the "suspicious timing"

of the termination of his employment as proof of a violation, Appellant's Br. 40, he had well-documented performance problems that preceded the termination: he received a formal warning in November 2010, failed to show significant improvement in 2011 (according to internal company memos describing Rothberg's performance), and his probationary period ended in July 2011 without any change in performance (according to the testimony of James Michael Graham, Rothberg's supervisor). Xerox's failure to pay him a commission was consistent with the company's written policy of which he was advised, and under the circumstances the denial was not arbitrary or capricious. Rothberg's reliance on *Potomac Chemical Co. v. Chapman*, 146 F.2d 664 (D.C. Cir. 1944), is misplaced; although the court held that a brokerage firm could not fire an employee "for the purpose of depriving [him] of commissions to become due by reason of work already done," the brokerage contract specified the employee would receive a ten percent commission within a particular time period and the employee "was told that his efforts were satisfactory." *Id.* at 665. Rothberg presented no evidence from which a reasonable trier of fact could infer that Xerox fired him to deprive him of the commission and thereby violated the covenant of good faith and fair dealing.

**C.** Rothberg also relies on the prevention doctrine as support for his entitlement to compensation. Under the prevention doctrine, a promisor cannot take advantage of the failure of a condition if the promisor prevented the condition from occurring. *See* RESTATEMENT (FIRST) OF CONTRACTS § 295. But the doctrine does not apply where the "the contract authorizes a party to prevent a condition from occurring." *Shear v. Nat'l Rifle Ass'n of Am.*, 606 F.2d 1251, 1256 (D.C. Cir. 1979). The Xerox Compensation Manual states that commissions and other incentive payments are subject to management

discretion. Even if Rothberg's employment had not been terminated, Xerox could have reduced or withheld any bonus on the basis of Rothberg's poor performance.

**D.** Rothberg's contention that the district court drew impermissible inferences and wrongly deemed certain factual disputes immaterial fails. *See* Appellant's Br. 44-46. The three factual disputes noted in the fact section of his brief—(1) "Whether Rothberg or Land was the first to identify the sales opportunity at DeWitt," (2) "Whether Rothberg had any substantial role in resolving the billing problem at DeWitt," and (3) "Whether Rothberg was terminated in order to deprive him of his commission," *id.* at 34—are not relevant to the merits of his claims. Rothberg's role in Xerox's dealings with DeWitt is immaterial, *see Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, because he was not entitled to a commission under Xerox's compensation policies. And resolving Rothberg's claim that his employment "was terminated in order to deprive him of a commission" is not necessary to decide whether Xerox's policies created a reasonable expectation of compensation. As noted, Rothberg does not dispute either the performance problems on which Xerox based its termination of his employment or that the equipment was only installed at DeWitt after his termination. Therefore, no reasonable juror could find that Xerox created a reasonable expectation of compensation.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. Circuit Rule 41.